(86 South. 595)

No. 23849.

**ADMINISTRATORS OF TULANE EDUCATIONAL FUND v. STAIR et al.**

(May 31, 1920. Rehearing Denied Nov. 3, 1920.)

*(Syllabus by Editorial Staff.)*

**1. Boundaries ⬯3(2)—The court should give effect to intention of parties.**

In determining boundary disputes, the courts should ascertain and give effect to the intention of the parties, if possible; for documents, maps, etc., are but symbols for that purpose.

**2. Boundaries ⬯3(1)—Monuments take precedence.**

In determining a boundary, natural and artificial monuments such as rivers, lakes, roads, etc., will control courses and distances, while courses and distances will control over quantity calls.

**3. Boundaries ⬯10—Act of partition affected by map attached.**

In determining a partition boundary, figures appearing on a map annexed to and made a part of the act of partition will be considered as written into the act.

**4. Boundaries ⬯3(5)—Courses will prevail over distances.**

In view of the liability of chain carriers to error, distances are regarded as more uncertain than courses.

**5. Boundaries ⬯37(2)—Evidence held to preponderate in favor of straight line between lots as shown by partition map.**

Evidence *held* to preponderate in favor of a presumption that a straight dividing line between lots was intended by parties to a partition as shown on a map annexed to and made part of the act of partition.

**6. Boundaries ⬯47(2)—Knowledge is essential to estoppel of purchaser as to boundary.**

Where plaintiffs did not learn of the true facts concerning boundary between their premises and defendants until many years after purchase, at which time survey was made, plaintiffs cannot be precluded from relief on the theory of estoppel; for one cannot be estopped by facts and circumstances as to existence of which he had no knowledge at time of acts relied on.

Appeal from Civil District Court, Parish of Orleans; George H. Théard, Judge.

Suit by administrators of the Tulane Educational Fund against C. A. Stair and others. From a judgment for defendants, plaintiffs appeal. Judgment annulled and reversed, and judgment ordered for plaintiffs.

Hall, Monroe & Lemann, of New Orleans, for appellants.

John C. Hollingsworth, Wm. Winans Wall, George Montgomery and John O. Streck, all of New Orleans, for appellees.

DAWKINS, J. This is a suit to fix the boundary between lots A and B of a tract of land known as the Foucher estate, situated in the city of New Orleans, according to an act of partition passed before James Fahey, notary, on April 10, 1889, and a map or plan made by L. J. Fremaux, surveyor, attached thereto and forming part thereof. Plaintiffs, as trustees for Tulane University, are the owners of lot B, situated on the east side of said boundary, and defendants are the owners of a portion of lot A abutting it on the west, and now consisting of a large number of lots owned by them separately.

Plaintiffs contend that the said boundary or division line should be drawn straight from a certain conceded point on the north or lake side of St. Charles avenue to what is known as the Marly tract on the north side of the property; while defendants claim that, starting from the same point on St. Charles

avenue, the line should be run straight and in a direction to strike the south or west line of Claiborne avenue at a point 532 feet, 6 inches, and 4 lines southeast of a point where the west line of said lot A (which is the same as the west line of the original Foucher tract) intersects the said south line of Claiborne avenue, and thence in a straight line to a common point on the line of the said Marly tract, thus causing the boundary line between plaintiffs and defendants to bend or buckle at Claiborne avenue; the difference between the two consisting of two triangular pieces of property with a common base on the south line of Claiborne avenue of 47.19 feet, and with west legs on the line contended for by plaintiff and east legs formed by the boundary claimed by defendants, and with apexes on St. Charles avenue and the line of the Marly tract at points common to the contentions of both sides.

There was judgment below sustaining the contention of defendants, and plaintiffs have appealed.

## Opinion.

In 1889 the entire Foucher tract north of St. Charles avenue was owned in indivision as follows: $15/36$ by the widow and heirs of Samuel P. Blanc; $10/36$ by the estate of William Henry; and $11/36$ by Joseph Hernandez. Certain of the owners in indivision brought suit against the others for partition, and on February 27, 1889, there was judgment in said cause, entitled C. E. Girardy et al. v. Heirs of William Henry et al., No. 23315 on the docket of the civil district court for the parish of Orleans, ordering the partition in kind of said property, and appointing three experts and a surveyor, one L. J. Fremaux, to divide said property into lots. Pursuant to said judgment and order, Fremaux made a map and survey of said Foucher tract, as per the following sketch, to wit:

Lots A, B, and C were made to represent the interests of the heirs of Blanc, estate of Henry and Hernandez, respectively, and the

said notary was proceeding to have the parties draw for the several lots, when Hernandez objected to this mode of proceeding and insisted that the several interests should receive the portions in the order mentioned; that is, lot A to the widow and heirs of Blanc, lot B to the estate of Henry, and lot C to Hernandez. At this point the matter was by the notary referred back to the court, and there was judgment ordering the partition to proceed in the manner urged by Hernandez. Accordingly there were allotted to the three sets of owners the portions of the property described · in the act of partition and from which we quote as follows:

"Now, these preliminaries being settled, Louis E. Lemarie, Arthur Benedic, and Evariste Blanc, all three experts appointed and sworn by me, notary, on the 13th of March, 1889, to form the lots for the purposes of the partition, did declare that, with the assistance of L. J. Fremaux, a surveyor appointed by the court for that purpose in said order of February 27, 1889, they had divided said property into three portions or lots, each of a value corresponding to the respective interests of the parties hereto in and to said property to be partitioned delineated on a figurative plan of survey made by said Fremaux, and designated by the letters A, B, and C on said plan, which paraphed ne varietur by me, notary, for identification herewith is hereto annexed as part hereof, which said lots are described as follows:

#### "Lot A.

"Beginning at the corner to this estate and the square of ground belonging to Blanc & Henry and marked A on said plan of L. J Fremaux herewith annexed, being the front corner on St. Charles avenue; thence with an angle with the front line 96° 26″ 30‴ ran 300 feet to B; thence on a line parallel to St. Charles avenue 240 feet to C; thence with the angle above mentioned ran on side line in a northeasterly direction 7,613 feet 11 inches and 7 lines to D on the Marly tract line; thence with said line in a southeasterly course 300 feet to E, the corner common to this estate and that of William Henry; thence southwestwardly 7,811 feet to F being front corner on St. Charles avenue, common to this estate and that of Henry; thence 496 feet 2 inches and 3 lines on north line of St. Charles avenue to place of beginning.

#### "Lot B.

"Beginning at F, above described, in a northeasterly direction 7,811 feet to the Marly tract line at E; thence on that line in a southeasterly direction 79 feet 5 inches and 4 lines to G; thence on the back line of Marly with an angle of 45° 53′ 40″ 4,444 feet 2 inches and 1 line to H, being the back line of the lot on the line of the New Orleans Canal property; thence on a southwesterly direction 12,192 feet 6 inches to I on the line of St. Charles avenue; thence up this line 405 feet 10 inches to the place of beginning at F.

#### "Lot C.

"Beginning at I, the corner common to the estate of Wm. Henry and this tract of land, 12,192 feet 6 inches to H, previously described; thence in a southwesterly direction 12,322 feet 8 inches and 5 lines on the line of Burtheville to J, front corner on St. Charles avenue, forming an angle with the side line of 75° 51′ 40″; thence with front line on St. Charles avenue 447 feet 3 inches and 6 lines."

It will thus be seen that both in their appearance upon the map and their description in the act of partition the division lines between lots A and B and between B and C appear to be straight; but on the map of Fremaux, annexed to and made part of the partition, the distances across lots A, B, and C along the south line of Claiborne avenue are given as 532′ 6″ 4‴, 276′ 6″ 4‴, and 302′ 11″ 1‴, respectively, and which, in order to have the dividing lines between lots A and B and between B and C conform to these figures at Claiborne avenue, requires that they buckle or bend.

[1-5] The question for our determination therefore is: Which shall control, the appearance of the lines upon the map and the description in the act, or the figures or distances shown upon the former and not mentioned in the deed, but made a part thereof by virtue of the annexing of the map?

It is the duty of the court in all cases of this kind to ascertain and give effect to the

intention of the parties, if possible, for the documents, maps, and symbols are but representations of that purpose. In the present case, however, there is an irreconcilable conflict between the appearance of the lines upon the map and the description of those lines in the act of partition, with the figures shown on the map. In such circumstances the law recognizes certain well-known guides, which, in the order of their respective values, are as follows: First, natural and artificial monuments, such as rivers, lakes, roads, streets, trees, stakes, etc.; second, courses and distances; and, third, quantity of land. Here there are no natural monuments, and the only artificial guides are the point of beginning on St. Charles avenue and the point of ending on the Marly line, which, according to the contention of both plaintiffs and defendants, are the same; so that we are relegated to courses and distances and the quantity of property intended to be given in the act of partition, together with such other evidence and circumstances as the record affords, in determining the intention of the parties and the correct location of the dividing line. It was not altogether the intention of the co-owners which was sought to be expressed by the partition, for the proceeding was more or less an involuntary one, reinforced by a judgment of court commanding the parties to take the portions of property which had been set apart as representing their respective interests. Hence it is the intention of the experts and surveyor appointed by the court, in forming the lots, which we are called upon to ascertain.

The act declares its purpose to make the lots correspond in value to the respective interests of the parties, and by running the division lines straight the areas of the lots A, B, and C would be nearer in proportion to those interests than to have them buckle or bend at Claiborne avenue, as contended for by defendants, as will be seen from the table given in the report of the expert or surveyor appointed by the lower court in the present case, which we quote as follows:

| With Bends in Lines at Claiborne St. | Without Bend in Lines at Claiborne | If in proportion of | should be |
|---|---|---|---|
| Lot A 3,830,000 | 3,680,000 | 15/36 | 3,567,000 |
| " B 2,230,000 | 2,304,000 | 10/36 | 2,378,000 |
| " C 2,500,000 | 2,576,000 | 11/36 | 2,615,000 |

Admittedly the most valuable portion of the property to be divided at the date of the partition was that closest to St. Charles avenue, and the frontages there were made to correspond nearer with the interests of the parties than the areas under either the division line contended for by plaintiffs or defendants; and since lot A did not extend further back from the avenue than approximately 7,800 feet and lots B and C went back more than 12,000 feet, the former was made correspondingly wider nearer the avenue and through the most valuable part of the tract. The strip of land now in controversy has its greatest width more than a mile from the St. Charles avenue, and formed a part of the property at the time of the partition possessing a comparatively small value; hence it could hardly be said that the lines were run as contended for by defendants in order to enhance the value of lot A, when without that expediency it already had an area in the most valuable portion of the tract exceeding its proportionate interest.

All of the engineers sworn on the trial, including the surveyor appointed by the court, admitted that an experienced surveyor, such as Fremaux was shown to have been, would not show his lines upon a map as running straight and have them so described in a deed, when as a matter of fact, they had actually been made to bend or form an angle as contended for by defendants in this case. Then again, the map which Fre-

maux presented to the joint owners as representing his division of the property indicated that each was to receive a strip having straight lines from front to back, and it is not at all improbable that, if this was not true, and they had been made aware of the fact, they would, when the matter was referred back to the court by the notary, have objected to such a division as is now claimed by defendants, with the probable result that their lines would have been made to conform to the descriptions in the act and to the appearances upon the map. It is hardly reasonable to suppose that they could have discovered such a deviation from this condition by the mere appearance of the figures on the map at Claiborne avenue. The variation was approximately 47 feet in a distance of 5,411 feet, or a little more than .868 feet to the 100 feet, and which would not be an unusual error in a distance of more than a mile, or the length of a section.

As against the facts and circumstances thus mentioned, indicating that the division line between lots A and B was intended to run straight from St. Charles avenue to the Marly line, defendants rely alone upon the figures placed by Fremaux on the south line of Claiborne avenue. It is said that courses and distances are among the most unreliable calls of a deed, because of the liability of error on the part of chain carriers. R. C. L. vol. 4, p. 108, verbo Boundaries, § 44. Distances are considered more uncertain than courses. Id., and authorities cited. We, of course, must treat the figures appearing upon the map as written into the deed, since the map was annexed to and made part of the act of partition; but even in ordinary business and commercial relations words are held to prevail over figures.

The line now in controversy is described in the partition as running from F to E on the map, and as drawn upon the original by Fremaux, who made the map, this line appears to be straight. In such circumstances it is presumed in law to be straight, unless there be other and controlling proof that the contrary was intended. Henderson v. Church, 7 Mart. (N. S.) 117; Ramos Lumber & Mfg. Co. v. Sanders, 117 La. 630, 42 South. 158; Cyc. vol. 5, p. 876. In our opinion, there are no such controlling circumstances in the present case, but the proof preponderates in favor of the dividing line between lots A and B having been intended to run straight from the point F on St. Charles avenue to the point E on the Marly line, as shown on the map of Fremaux annexed to and made part of the act of partition between the heirs of Blanc, estate of Henry and Hernandez in 1889.

[6] Defendants have pleaded estoppel against the plaintiffs on the ground that, having purchased on May 20, 1893, from John M. Bonner, the then owner of lot A according to the Fremaux map, a triangular piece of ground fronting on St. Charles avenue, with its apex resting in the south line of Claiborne avenue at the point where the dividing line between lots A and B according to the Fremaux map was shown to cross the said south line of Claiborne avenue, with the east line of said lot D formed by the upper or west line of the original lot B, plaintiffs cannot now be heard to say that the boundary in dispute is different to that contended for by defendants upon the Fremaux map. However, the purchase from Bonner was made in 1893, and the plaintiffs did not discover the true situation with respect to the boundary line between lots A and B until a survey had been made by one Waddill in 1909. One cannot be estopped by facts and circumstances as to the existence of which he had no knowledge at the time the acts relied upon as the basis of the estoppel were committed.

It would seem that no useful purpose could be served by discussing the mass of other evi-

dence in the record, involving matters arising subsequently to the act of partition, and most of which, in our opinion, tend to sustain the contention of the plaintiffs.

For the reasons assigned, the judgment appealed from is annulled and reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of plaintiffs and against defendants, fixing the boundary line between their properties according to a a straight line drawn from the point F on St. Charles avenue to the Point E on the Marly tract, as said letters·appear upon the map or plat of L. J. Fremaux, surveyor, attached to and forming part of the act of partition between the heirs of Samuel P. Blanc, estate of William Henry, and Joseph Hernandez, commenced on April 10, and closed on June 29, 1889, and recorded in Conveyance Office Book 130, folios 930, 931, and 932, of the parish of Orleans, La. It is further ordered that the costs be borne equally by plaintiffs and defendants; that is, one-half to be paid by each side.

MONROE, C. J., takes no part.