LAND, J.
 

 This is an action in boundary, in which the plaintiff alleges that the Houssiere-Latreille Oil Company has erected a brick building on its lot in the town of Jennings, La., and has encroached to the extent of 18 inches upon the adjoining lot of plaintiff, and that the entire wall of said building and foundation has been located upon plaintiff’s lot.
 

 Plaintiff prays that the boundary line between his property and that of defendant company be judicially fixed, and that said company be required to demolish and remove the brick wall located upon plaintiff’s premises and to give to plaintiff full possession of his premises.
 

 The judgment of the lower court holds that the wall of defendant company’s brick building encroaches upon the property of the plaintiff one-half of its thickness, namely, one-half of 18 inches plus nine-hundredths of a foot, and orders defendant company to remove its wall from the property of plaintiff and to complete said removal not later than 60 days after the judgment becomes final.
 

 The case is before us on an appeal by defendant company from said judgment.
 

 1. The property owned by plaintiff is described in his title deed as follows:
 

 “That certain lot of ground in block twenty (20) of said town, embraced within the following metes and bounds, beginning in Front street forty-four (44) feet from the southwest corner of said block twenty, thence northward on a line parallel with North Main street one hundred and sixty-four (164) feet, thence eastward parallel with Front street forty-four (44) feet, thence southward parallel with North Main street one hundred and sixty-four (164) feet to Front street, thence on north side Front street to place of beginning.”
 

 Defendant’s property, as per its title deed, is described as follows:
 

 “A lot with forty-fouij feet front on Railroad avenue, and eighty-nine (89) feet front on Main street, being in the southwest corner'of block twenty (20j of McFarlain’s original plat of the town of Jennings, La.”
 

 The crucial question in this ease is as to the proper location of the west property line of block 20 in the town of Jennings, which is built upon the N. E.
 
 Vi
 
 of S. E.
 
 Vi
 
 and S.
 
 Vs
 
 of S. E.
 
 Vi
 
 of Sec. 34, T. 9, R. 3. A. D. Me
 
 *57
 
 Farlain, the original owner, on September 20 and 21, 1883, caused the N. E. % of S. E. % of said section to be subdivided into lots and blocks by George O. Elms, a surveyor. The whole of block 20 is within the lines of the Elms survey, and. the southeast corner of said block is on the south line of the N. E. % of S. E. % of said section.
 

 The district judge has established the boundary line between the lots of plaintiff and defendant company according to corners within the Elms survey, which have been adopted and acquiesced in by the property owners in block 20 for a number of years, and which have been checked upon the southwest corner of block 51, as a starting point, a corner also acknowledged as correct by the owners of said block. It is true, the original owner, A. B. McFarlain, w.as dead, and that, at the time of the judicial surveys made by Vandercook and J. W. Sylvester in this case, none of the original stakes or markers of the Elms survey were in existence. The lower court has been compelled, therefore, to receive and consider the testimony of witnesses as to the disputed points within the Elms survey, and to determine from the evidence whether such points are authentic relocations of the original stakes of that survey. The lot now owned by defendant company and other lots in said block were sold by McFarlain, the original owner, to various purchasers, under the original Elms survey, and before the survey made by Kasson Freeman in the spring of 1885 of the S. % of S. E. % of said section, and the resurvey by him, at the time, of the N. E-. % of S. E. %, embraced within the original Elms survey. The map of the Elms survey shows located on the east property line, at the southeast corner of block 20, a store building owned and erected by A. D. McFarlain, the original owner, and also a store building erected about the year 1884 by Berouen & Andrus on the lot at the southwest corner of the block 20, the same lot now owned by defendant company. These buildings were erected on lots whose corners had been marked by the original stakes placed there under the Elms survey. Under this state of facts, the trial judge was justified in accepting points within the Elms survey as determinative of the correct location of the lines between the respective lots of plaintiff and defendant company, as it is well settled that in the re-establishment of lines and corners in a given subdivision, monuments within said subdivision should be accepted as correct locations, in preference to monuments in a subsequent survey thereof, or in a subdivision of an adjoining tract. Hall v. Caplis, 109 La. 483, 33 So. 570; Gage v. Danks, 13 La. Ann. 128; Johnson-Smith on Surveying, § 153, p. 190, par. 12.
 

 The trial judge, therefore, was fully authorized to amend the judicial survey made by J. W. Sylvester, as to the starting point adopted by him at the southeast corner of section 34, being the southeast corner of Mc-Farlain’s original map of town of Jennings. The court below also properly heard testimony as to the authenticity of the relocation of the original markers at the corner of blocks 20 and 51, for the reason that, when the original stakes in a given survey have decayed or been destroyed, their exact location can frequently be established by testimony of old residents, or the construction of buildings, sidewalks, curbings, etc. In such cases recourse to secondary evidence becomes necessary. Johnson-Smith on Surveying, p. 222; Id. § 338, pp. 457, 458; Id. § 330, p. 661; 4 R. C. L. § 41, p. 105; 9 C. J. § 15, p. 162.
 

 Courses and distances are the most unreliable evidence in fixing the location of an old survey, and distances are more uncertain than courses. Admin. Tulane Edu. F. v. Stair, 148 La. 19, 86 So. 595; Shreveport v. Simon, 132 La. 69, 60 So. 795 ; 4 R. C. L. § 44, p. 108; Clark on Surveying, § 17, p. 13.
 

 As indicated on the map of the Elms
 
 *59
 
 survey, the tracks and right of way of the Louisiana Western Railroad extend through the extreme southwest corner of the original 40-acre tract. Prior to the Elms survey, a fe¿ce was constructed by the railroad company around its section house. However, the fence posts selected by Yandercook as a starting point are shown by the testimony not to belong to the original fence around this section house, but to be the stumps of a skeleton fence that stood about 4 feet east of the original fence, and which had been erected to protect banana plants.
 

 The first judicial survey made by Yandercook was properly rejected by the court. This survey begins from an erroneous starting point, reduces the size of the lots of plaintiff and defendant company from 44 feet to 43.72 feet, and moves the west property line of block 20 over on the sidewalks on south Main street, in disregard of well-established corners. Moreover, the effect of the Yandercook survey is to move all of the streets, buildings, fences, etc., in the town of Jennings too far west by a distance of about 4 feet.
 

 Old fences are very unreliable as starting points or checking points in city surveys, and a surveyor should use great caution in adopting same. Clark on Surveying, § 18, p. 14; Johnson-Smith on Surveying, p. 732; Martin v. Breaux, 12 La. Ann. 690.
 

 The second judicial survey, made by Sylvester, amended and adopted by the lower court, does not pretend to approve as authentic any corner pipe or stake, mentioned therein, but simply gives the starting point and location of corners according to courses and distances. The location of certain pipes, pins, or stakes at corners are indicated in the survey; the discrepancies between the corners located by courses and distances and the corner pipes, pins,, or stakes as found are stated; but the question as to their adoption or rejection as authentic relocations of these cor.ners is left entirely to the discretion of the trial judge.
 

 Monuments, either natural or artificial, used to mark either lines or corners, are more reliable than courses and distances, and in ease of conflict must prevail. Admin. Tulane Educational Fund v. Stair, 148 La. 17, 86 So. 595; Hall v. Caplis, 109 La. 484, 33 So. 570; Le Breton v. Lewis, 5 Rob. 479; 4 R. C. L. § 41, p. 105; Id. § 44, p. 108; Id. § 56, p. 117; 9 C. J. § 118, p. 210; Id. § 138, p. 218; Id. § 45, p. 176.
 

 The trial judge, in homologating the judicial survey made by Sylvester, sustained the opposition of plaintiff to the extent of accepting the iron pipe at the southwest corner of block 51 as an authentic reproduction of the original survey stake, and as a starting point for the measurements used in locating the disputed line in this'case, and approved the procés verbal of .the Sylvester judicial survey, as amended.
 

 This brings us to the consideration of the testimony in the case as to the authenticity of the relocation of the southwest corner of block 51 and of the other comers in controversy. W. E. Coffin, a resident of Jennings for 31 years, and his associates, own the Coffin & Jaenke building, erected at the northwest corner of block 20. This lot was purchased from Feleno Derouen by Coffin and associates. Before constructing the Coffin & Jaenke Building, Coffin employed Harvey, a civil engineer of ability and experience, to locate the lines. Derouen pointed out to Coffin an iron stake at the southwest corner of block 20 as the correct corner. A store had been kept by Derouen on this property for a number of years. The lines were located by Harvey,.and afterwards checked by Greer, a civil engineer, and found correct. Coffin had a resurvey made by Greer before the building was erected, as the. contractor contended that the measurements made by Harvey were erroneous. Coffin recalls also that there was a stake at
 
 the
 
 southwest cornel•
 
 of
 
 block 20, known as the McFarlain corner. The Coffin & Jaenke building was completed
 
 *61
 
 in the year 1903, is still standing, and was occupied at the date oi the trial of this suit by Oappal. The west wall of the Coffin
 
 &
 
 Jaenke building was set exactly on the west property line, and the east wall 6 inches from the east line of the lot. A. D. McFarlain was still alive at the time these stakes were in existence, and resided in the town of Jennings.
 

 Derouen had also pointed out the iron stake at the southwest corner of block 20 to Jos. McFarland, stating, at the time, that they had taken the original stake, and had driven down the iron stake in its place. The sidewalk, which was wooden, was just outside of this iron stake at the time McFarland saw it. This witness also saw the instrument set over this iron stake, when the survey was made to locate the Coffin & Jaenke building.
 

 J. F. Harvey, civil engineer, arrived in Jennings shortly after a destructive fire in the business section of the town, in the year 1902. All the buildings then standing on block 20 were destroyed. . Among the first surveys made by Harvey was a survey for A. D. Mc-Farlain and for the Coffin & Jaenke building. A. D. McFarlain, who platted the town of Jennings, pointed out to Harvey the spot at the southeast corner of block 20 where the original stakes would be found. Upon digging into the ground at the point indicated, Harvey located a 2x2 stake at the southeast corner of McFarlain’s old brick store. Running from this stake the proper course and distance, the position of the original pine stake at the southwest corner of block 51 was located, and, upon digging into the ground, was found by Harvey. In other words, the southeast corner of block 20 checked with the southwest corner of block 51. The latter comer was perpetuated by Harvey at the time of the construction of a cement sidewalk, by driving an iron pipe, now in the sidewalk, over the original pine stake.
 

 Sylvester had his attention called by Harvey to the fact that he should find the remainder of this original stake in the iron pipe in the cement sidewalk. Upon digging, Sylvester found a fragment of the stake, which was produced in evidence before the trial judge. At the time Harvey made the Coffin and Jaenke survey, he found the two original corners at the southeast and southwest corner of block 20, the original corner at the southwest comer of block 51, and also the remains of a stake, at the northeast comer of block 20, later perpetuated by him by driving a harrow tooth at the place it then stood. These corners checked with the pine stake at the southwest comer of block 51.
 

 The Coffin & Jaenke building was constructed flush with the property line upon Main street. The hotel building of defendant company is in a line with the Coffin & Jaenke building, and therefore is properly located on the west line of the lot at the southwest corner of block 20.
 

 In the year 1902, shortly after the Jennings fire, the plaintiff and A. D. McFarlain joined in building a brick apd concrete foundation between their
 
 lots;
 
 one-half of said foundation being located on plaintiff’s lot. The property lines were located by Stevens, jointly employed by the parties as a surveyor, and at that time the iron rod at the Derouen corner, the remains of the original stake at the southeast corner of block 20, and the remains of the stake at the southwest corner of block 51 were all in existence, and the line between the lots of plaintiff and McFarlain was located in accordance with these comers.
 

 Plaintiff prepared to build upon his lot about the time of the institution of this suit, October, 1919, but, before building, the contractor uncovered this foundation wall, which was below the surface of the lot, and discovered by actual measurements with a steel tape that the distance from the west face of the wall of defendant company’s hotel building to the center of the foundation on the east line of plaintiff’s lot was 88 feet. This is ad
 
 *63
 
 ditional proof that the west wall of the hotel building of defendant company was built flush with the west property line of block 20, and that the east line of plaintiff’s lot, adjoining the McEarlain lot, is correctly located.
 

 As stated by the trial judge in his opinion in this case:
 

 “Mr. Sylvester’s measurements show the disputed iron pipe (southwest corner of block 51) to be plus 84, the east face of the Woodman building at the northwest corner of block 51 plus 73, the southwest corner of the hotel property in block 20 plus 60, and the northwest corner of the Coffin & Jaenke building plus 66. The greatest variance between these points is plus 24, a slight difference when we consider a probable disturbance of actual corner markers in the construction of buildings.”
 

 The measurements made by Sylvester, therefore, tend to confirm the location on the ground of these corners and buildings as correct. Defendant’s lot is 44 feet wide. The west wall of the hotel building of said company is located on the west property line of block 20. As the width of this building is 45.5 feet, its encroachment upon the lot of plaintiff is inevitable, as a building 44 feet 9 inches would cover the lot of defendant company from west property line to east property line, and allow 9 inches of the east wall to rest upon the lot of plaintiff.
 

 We are of the opinion that the evidence establishes with reasonable certainty that the comers of block 20 are authentic relocations of the original stakes driven at said corners. Therefore any discrepancy in measurements by courses and distances must yield, under well-settled jurisprudence, to the actual location upon the ground of these corners in the original .survey.
 

 2. Plaintiff did not discover that the hotel building of defendant company encroached upon his lot until measurements were taken by him and the contractors for the erection of his building in the year 1919. The construction of defendant company’s four-story brick building began in 1908 and was completed early in 1909. In 1915 the building was remodeled and converted into a hotel and office building.
 

 The case of Pokorny et al. v. Pratt, 110 La. 609, 34 So. 706, relied upon by defendant company, has no application to the present case. The plaintiff in that case knew of the encroachment of defendant’s four-story brick building upon her lot, when the building was only two stories high, but, instead of taking out an injunction under O. O. art. 866, forbidding defendant to continue the work, plaintiff permitted the building to be completed, with a full knowledge of its encroachment upon her premises. The court held under that state of facts that plaintiff was bound by her silence and estopped from demanding the demolition of the wall. Moreover, in that case plaintiff had sued for damages.
 

 3. Nor do we find any acquiescence in the encroachment upon his premises by plaintiff, resulting from the foreman joining the wall of plaintiff’s building to the wall of defendant company’s building. Plaintiff’s building was entirely upon his own property, even when joined to the wall of deféndant company’s building. The contractors of plaintiff had been instructed by him not' to join these walls. The act of the foreman in doing so was unauthorized and inadvertent, and the walls were disconnected by the order of plaintiff.
 

 4. Defendant’s plea of prescription of 10 years is not well founded. Article 853 of the Civil Code provides that:
 

 “If the boundaries have been fixed according to a common title, or according to different titles, and the surveyor has committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed, be acquired by an adverse possession of ten years, if the parties are' present, and twenty years, if absent.”
 

 In order to sustain the plea of prescription of 10 years under article 853, it is necessary not only to show a possession of .10 years, but
 
 *34
 
 also that the possession has been held by boundaries fixed by a surveyor in accordance with article 833 and consecutive articles of the Civil Code, requiring the work to be done by a sworn surveyor of the state, notice to the parties, examination by the surveyor of title papers, procSs verbal of survey, etc. Gray v. Couvillon, 12 La. Ann. 730.
 

 There is no evidence to show any survey made by a sworn surveyor of this state, in conformity with the requirements of the Civil Code, fixing the boundary lines between the lots owned by plaintiff and defendant company, and adverse possession by defendant company for 10 years under such survey. '.
 

 5. Articles 864, 865, and 866 of the Civil Code refer to oppositions to new works during the process of their construction, when such works may be detrimental to the adjoining proprietor. Article 508 of the Civil Code applies to the removal of works after their completion, and provides that:
 

 “When plantations, constructions and works have been made by a third person, and with such person’s own materials, the owner of the soil has a right to keep them or to compel this person to take away or demolish the same.”
 

 “If the owner requires the demolition of such works, they shall be demolished at the expense of the person who erected them, without any compensation; such person may even be sentenced to pay damages, if the case requires it, for the prejudice which the owner of the soil may have sustained.”
 

 Plaintiff has a clear legal right under this article to demand the demolition and the removal from his premises of the wall of defendant company’s building. Plaintiff was not compelled, therefore, to accept any compromise in the matter, if he did not see fit to do so. Nor can plaintiff be penalized with the payment of all the costs in this case as a punishment for pursuing a legal right which he has successfully asserted and enforced in the present case.
 

 When it is remembered that defendant company has attempted to erect a building 45.5 wide upon a lot only 44 feet in width, it jumps to the eye that defendant company was well aware of the fact that its building when erected would encroach upon the premises of plaintiff. This result was inevitable, and obviously foreseen. It cannot be contended, therefore, in this case, that the equitable considerations are entirely on the side of defendant company. The costs in this case should therefore be borne equally by the plaintiff and defendant company, as decreed in the judgment of the lower court.
 

 6. Defendant company filed a motion for a new trial April 5, 1921, and a supplemental motion June 11, 1921, in which it is stated that defendant company, if granted a new trial, will be able to show conclusively that its hotel building is 2.97 feet out in North Main street, and is not encroaching upon plaintiff’s premises.
 

 Plaintiff filed a motion to strike from the files the motion and amended motion for a new trial as coming too late. The judgment in this case was read and signed in open court March 28, 1921, and filed March 30, 1921.
 

 The court overruled the motion for new trial for the following reasons:
 

 “But there is nothing, after all, in the new evidence, as set out by the mover, which would be likely to change the result of the ease. It would have but little, if any, value until there was proof that the surveyor of the town site adopted the railroad occupancy, and tied his plat to it; and, even in event of such proof, which has not been tendered, there is no showing and no probability that it would overcome the evidence of the authenticity of monuments upon which the judgment is based.”
 

 “The ease has been fully tried. A great mass of evidence is in the record. Every facility afforded by time and expert assistance has been availed of. There must be an end to any litigated case, however important it may be. There is no good reason, in the view of the court, why justice cannot be done in this case upon the record already made up.” Ev. p. 156.
 

 
 *67
 
 It is therefore clear that the trial judge exercised correctly his legal discretion in overruling the motion for new trial.
 

 Judgment affirmed.
 

 O’NIELL, C. J., dissents.
 

 ST. PAUL, J., dissents and assigns reasons.
 

 OVERTON; J., recused.