On Rehearing
 

 ROGERS, Justice.
 

 ■On reconsideration of this case we find no error in the opinion and decree heretofore handed down except as to the damages awarded plaintiff.
 

 The only matter we find it necessary to comment upon before considering the question of damages claimed by plaintiff arises from the complaint set forth in the original brief filed on behalf of defendant on the rehearing of the case under the caption “Error No. 5.” Defendant’s complaint is that “the lower Judge and this Court, in its original opinion, were in error in not applying the well recognized equity principle of Balancing the Equities in Trespass Cases.’ ” Mo such issue was presented in the district *.ourt, or in this court on the original hearng, or in the defendant’s application for a rehearing. It appears for the first time merely by way of argument in the brief filed on behalf of the defendant on the second hearing of the case. It is questionable: whether the proposition involved in defendant’s complaint under the so-called “Error No. 5” is properly before this court for decision. But be that as it may, we find no warrant to introduce into the jurisprudence of this State the doctrine of “Balancing the Equities in Trespass Gases,” where, as in this case, under the provisions of Article 508 of the Civil Code the plaintiff has a clear and legal right to demand the demolition, and removal from his premises of the encroaching wall. Barker v. Houssiere-Latreille Oil Co., 160 La. 52, 106 So.
 
 672.
 

 We shall now consider plaintiff’s claim for damages, amounting in the aggregate to $3,-650.
 

 In his original petition, plaintiff prayed for the recovery of $2,300 for damages suffered by him by reason of the encroachment of defendant’s wall on his property, and in his supplemental petition, plaintiff prayed for the recovery of an additional $1,350 for damages suffered by him in the loss of the: rental value of the space occupied by the: wall from August, 1921, to February, 1940t
 

 In passing upon plaintiff’s claim for damages, the trial judge observed: “This claim is rather speculative and the proof thereon somewhat sketchy. It must be borne in mind that the plaintiff could have had this controversy determined by the courts at any time after he discovered the encroachment.”' After making this observation, the court made the further observation, “that it would not be just and fair at this late date to grant the full amount prayed for. The sum of $1,-250.00 on this particular claim will be awarded plaintiff.”
 

 
 *724
 
 Esnard discovered the encroachment of the wall of the Cangelosi building on the property he purchased from the Baton Rouge Realty Company in the year 1921, when he had his property surveyed with a view of erecting á building thereon. However, he did not 'institute suit to have the controversy judicially determined until the latter part of the year 1938. T.he fact that he waited nearly seventeen years to institute suit to establish the boundary between his property and the property of defendant and to compel the removal of defendant’s wall indicates that he placed little or no value on the space occupied by the wall. The claim for damages as an incident to the boundary suit has every appearance of being asserted merely for the occasion.
 

 Stale claims are regarded with disfavor. Plaintiff’s delay in claiming damages ■ creates an unfavorable presumption, which can be removed only by peculiarly strong and exceptionally conclusive testimony. Bodenheimer v. Bodenheimer’s Ex’rs, 35 La.Ann. 1005. Moreover, if the proof were sufficiently strong
 
 to
 
 overcome the presumption, plaintiff’s claim for a money judgment would be partly, if not wholly, barred by one of the prescriptions pleaded by the defendant in his answer and in his special plea filed in this court.
 

 But the proof offered by the plaintiff to establish the damages suffered by him, as remarked by the trial judge, is somewhat sketchy and the claim itself is highly speculative in character. The remarks of the trial judge are amply supported by the testimony, or rather by the lack of testimony, in the record.
 

 From the allegations of plaintiff’s original and supplemental petition and the attached prayers, it is difficult to determine whether plaintiff’s claim for damages is based on a tort or on a quasi contract. However, it is argued in plaintiff’s brief that while he refers to his claim as one for damages, he sets out that the claim is based on his deprivation of the use of the property which defendant encroached upon, and that the measure of his damages is the rental value to the defendant of the space occupied by the wall. On page 7 of plaintiff’s brief filed on April 27, 1942, plaintiff makes the general statement that the rental value to defendant was shown to be from $120 to $150 per year per front foot. In attempting to explain the nature of his claim, plaintiff uses the following language: “Plaintiff is claiming that defendant encroached either 14%" or 16" depending upon whether this Court decides defendant was entitled to encroach 8" for his party wall.” This is in itself indefinite. Plaintiff makes this further statement: “Hence the amount of $150.00 per year which plaintiff has placed as a rental value of the property encroached on and hence as the amount which defendant has received for property not his own is reasonable and supported by the evidence.”
 

 There is no evidence in the r.ecord as to what rent defendant has received, if anything, by reason of the encroachment of his wall on plaintiff’s property. Plaintiff relies on the testimony of J. Russell Doiron, a real estate agent of the City of Baton Rouge, who testified that the rental value of property situated on the same street and in the same block as the property involved in this dispute ranged from a minimum of $10 to a
 
 *726
 
 maximum of $12.50 per front foot per month. Mr. Doiron testified that those values applied only as far back as about five years. He also testified on cross-examination that the value would largely depend upon the nature of the improvements and the type of business conducted therein. The testimony of Mr. Doiron considered as a whole is not satisfactory and can not serve as the basis for a judgment for the damages claimed by plaintiff.
 

 Furthermore, the evidence shows that to some extent Esnard availed himself of the benefit of the wall erected by Cangelosi. The testimony shows that when Esnard constructed his building in 1921 he placed the southern side of the building against the northern side of the 'Cangelosi building. In order to serve as the southern wall of his building, Esnard placed against the north wall of the Cangelosi building 2x6 timbers placed 16 inches apart. He nailed laths on the north side of these timbers and he placed plaster on the north side of the laths. The laths and the plaster formed a surface about an inch thick. This furnished Esnard with a continuous lath and plaster wall about an inch thick extending from the floor to the ceiling of his building. From this wall at 16 inch intervals timbers 2 inches wide jutted out southward 6 inches. The wall, constructed by Esnard, does not extend above the ceiling and there is a space of 18 inches between the ceiling and the roof where Esnard did not construct any wall but only extended the 2x6 timbers which he placed 16 inches apart. Esnard attached the roof of his building to the north wall of the Cangelosi building in order to prevent rain water from getting in the space between his wall and the wall of the Cangelosi building.
 

 If the Cangelosi building were not in existence, or if it were torn down, when it rained, the water would blow
 
 into the
 
 Esnard building between the ceiling and the roof, seep through the ceiling, and damage the floor and contents of the Esnard building. The rain water would also blow against the plaster and lath wall, causing the plaster to disintegrate in a very short period of time, and allowing the rain water to enter the Esnard building-on the south side between the floor and the ceiling. If the roof of the Esnard building were not attached to the Cangelosi building, the rain water would fall between the north wall of the Cangelosi building and the south wall of the Esnard building, thereby damaging the plaster of the Esnard wall and in due time rotting the 2x6 inch timbers against which the wall of the Esnard building is built. In other words, the north wall of the Cangelosi building protects the Esnard building from the ravages of the weather. The Esnard building would not be a complete structure in the absence of the north wall of the Cangelosi building, and in its present form would be unusable without the protection afforded by the wall.
 

 From all of which it clearly appears that Esnard from the beginning has used and is still using the north wall of the Cangelosi building for the benefit and protection of his building. In these circumstances, we fail to see wherein we would be justified in awarding Esnard any amount whatever on his claim for a money judgment.
 

 For the reasons assigned, the judgment of the district court in favor of plaintiff and
 
 *728
 
 against the defendant for $1,250 as damages, representing plaintiff’s loss of the use of the space occupied by defendant’s wall, is annulled and it is now ordered that plaintiff’s demand for damages be rejected. In all other respects, the judgment of the district court is affirmed; costs of appeal to be paid by plaintiff. Plaintiff’s right to apply for' a rehearing is reserved.
 

 O’NIELL, C. J., and PONDER, J., absent.