71 So.2d 648 (1954)
JONES et al.
v.
DYER et al.
No. 3806.
Court of Appeal of Louisiana, First Circuit.
March 22, 1954.
Rehearing Denied April 26, 1954.
*649 Watson, Blanche, Fridge, Wilson, Posner & Thibaut and Kantrow, Spaht & West, Baton Rouge, for appellants.
Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, for appellees.
CAVANAUGH, Judge.
Plaintiffs own approximately 300 acres of land situated in Section 41, Township 5 South, Range 2 East, which they acquired from Dennis F. McGrath, Jr. on September 7, 1935. Defendants own approximately 150 acres of land which they had inherited from their mother, Mrs. Anna E. Dyer, and their father, Robert F. Dyer, who had acquired the same from Dennis F. McGrath, Jr., by deed dated October 14, 1933.
This suit was brought by plaintiffs on February 14, 1951, to have the Court judicially declare the boundary between the two properties to be as shown on a map made by a licensed surveyor and thereafter signed by the plaintiffs and by Robert F. Dyer, the father of the defendants. *650 In the alternative, the plaintiffs prayed that if the survey attached to their petition and which was made by the licensed engineer and surveyor did not establish the boundary between the two properties the Court should fix the boundary line in the manner prescribed by law.
The defendants filed an exception of no cause or right of action on the grounds that the main demand of plaintiff did not seek any relief authorized under the codes, statutes or jurisprudence of this state governing real actions; and that the alternative demand did not allege a cause or right of action because the petition did not allege that the boundary had never been fixed.
The Court heard arguments on the exception of no cause or right of action and by brief and overruled the exception.
The defendants then answered the plaintiffs' petition by a general denial and then pled that they are the owners of the property which they describe in Paragraph 12 of their petition, the particular description being made by a survey made on December 1, 1949 by Brown & Butler. They attached to their answer a map or blueprint of the survey referred to and further allege that the property adjoining their property on the north is owned by the plaintiffs. They further alleged that plaintiffs' property on the north and their property are physically separated by a fence which has existed in the same location as a visible boundary between said estates continuously for more than 40 years and that said boundary was recognized as such by the respective owners and that said estates were physically separated by said fence for more than 40 years.
They further alleged that they and plaintiffs and their respective authors in title have recognized the fence as a common boundary between said estates continuously and that said boundary has been fixed and established by the consent of the respective owners of said adjoining estates, and that the limits of their respective estates have been marked by visible bounds continuously for more than 40 years and they pled the prescription of 10, 20 and 30 years.
They further pled that the boundary between the respective parcels of land had been fixed and established prior to April 21, 1949, the date of the survey and map made by Earl Porter by consent of the respective owners of said estates, and they especially averred that there had been no dispute as to the location of said boundary on and prior to said date to necessitate the fixing of a boundary between said estates.
They further averred that the survey made by Porter was not made for the purpose of fixing the boundary, but rather for the purpose of reflecting on the map the correct location of the visible boundaries described in their answer; that their ancestor, Robert F. Dyer, affixed his signature to said map under the erroneous and mistaken belief that the line made by Porter on said map represented the location of the visible boundaries. They further plead in the alternative that if the survey should be found and held purporting to fix and establish the boundaries between said estates, it did not accomplish the purpose because said boundaries of said estates were already physically separated by visible bounds and that the survey and map made did not comply with the requisites of the law for fixing boundaries. They further plead in the alternative that the survey and map submitted by Porter showing the location of the boundary between the two estates was incorrect and that plaintiffs obtained the signature of their ancestor through fraud and error as previously pled, and that the visible bounds never existed at the location of the boundary line shown on the map of April 21, 1949.
They further pled in the alternative that since the property was standing in the name of Anna Chaney Dyer, wife of Robert F. Dyer, and belonged to the community of acquets and gains existing between them, no written contract amounting to a disposition of said property or affecting *651 the boundaries of said property could be made by her husband without her written authorization or consent and that said purported change in said boundary was an absolute nullity.
They further pled the prescription of 10, 20 and 30 years in bar of plaintiffs' action to fix the boundary and pled by plaintiffs in the alternative.
Attached to defendants' answer is a survey of the fence which they contend is the visible boundary existing between the two properties and which has existed for the past 40 years and which was made by Brown & Butler.
The case was partially tried on July 10, 1951 and on July 11, 1951, plaintiffs and defendants entered into a stipulation requesting the Court to appoint a duly qualified licensed surveyor to make a survey by the use of all evidence of record available to him and by use of all visible signs on the property, with the understanding that he was not to accept as conclusive either the Porter survey or the Brown-Butler survey, and that after he completed his survey it would be available to the Court, plaintiffs and defendants. This stipulation further provided that if the matter was not adjusted between the parties, the trial of the case would then be resumed and the rights of all the litigants were reserved as they existed prior to the time the stipulation was entered into and that neither party would be bound by the survey.
Pursuant to this stipulation the Court appointed John I. McCain to make a survey. He made a field survey and map as directed, bearing date September 25, 1951, and which was filed in the record as Exhibit P-10.
The lawsuit was not adjusted, and additional testimony was taken on April 29 and 30, 1952. The Court found, after considering the three surveys, that there was a wide divergence of opinions as reflected by the three surveys as to the exact location of the boundary line and denied plaintiffs relief under their main demand for a declaratory judgment and held that it could not fix the boundary on any of the surveys and dismissed their suit.
Plaintiffs then filed a motion for rehearing and insisted that the Court grant them relief under their alternative plea and appoint a surveyor to make a survey and settle the boundary question according to law. The Court granted a rehearing and subsequently issued an order appointing Sam G. Dupre, a licensed surveyor, to survey the premises described in the petition and answer and report to the Court according to law. This surveyor made the survey and filed his report on February 20, 1953. The defendant filed an objection to the homologation of the proces verbal of the survey by Dupre and additional evidence was heard by the Court. The Court, for written reasons, signed, approved and homologated the proces verbal and map or survey and rendered a judgment in favor of the plaintiffs and against the defendants and ordered that the boundary between the property of plaintiffs and defendants be fixed in accordance therewith at the cost of defendants.
The defendants have appealed from the judgment and insist here: (1) that the Trial Court erred in overruling their exception of no cause and no right of action; (2) that the evidence showed on the trial of the case that the visible boundaries existing between the two properties had been in existence for more than 30 years and was so recognized between plaintiffs and defendants and their authors in title; (3) that if the boundaries were not so recognized and accepted they would be in existence for more than 30 years and that the pleas of prescription of 10, 20 and 30 years should have been maintained.

Exception of no cause or right of action.
The plaintiffs claim that the petition does not set forth a cause or right of action under the main demand because it does not seek relief authorized by the Code of Practice, statutes or jurisprudence of this state, and that the alternative demand *652 did not allege a cause or right of action of boundary because the petition did not allege that the boundary had never been fixed.
We think that the allegations of this petition, taken as a whole, both on the main demand as well as on the alternative demand, show that there is a boundary dispute between plaintiffs and defendants, and that the plaintiffs' petition expresses a cause or right of action when they asked the Court to judicially have the boundary fixed. Furthermore, in addition to this, although plaintiffs and defendants reserve their respective rights under their joint stipulation, they both agreed for the Court to appoint a surveyor and subsequently took part in proceedings looking to the establishment of either a pre-existing visible boundary between the two properties or to have one established by a survey. Technical pleadings of this kind are looked upon with disfavor when they do not put an ultimate end to the lawsuit. Courts abhor a multiplicity of suits and after hearing all of the evidence in this case without objection on the part of exceptor, we think the judgment of the Trial Court overruling the exception of no cause or right of action was correct.
"It is a well fixed rule of law and equity that in order to determine its true character and the nature of the relief sought, a court should and will look to the substance of a demand, rather than address itself to technicalities; and that a litigant seeking the aid of the court to enforce a right will not be turned away, even temporarily, on account of inartful pleading unless no other course is open to it." Bozeman v. McDonald, La.App., 40 So.2d 517, 519.
The seriousness with which the appellant urges upon us the proposition that the visible boundary, evidenced by the old fence, was accepted by the plaintiffs when they bought the property and by their authors in title for a long period of time, we have decided that this contention should be considered separate and apart from the prescription pleas.
The defendant seriously argues that visible boundaries in the nature of an old fence existed between the two tracts of land at the time both plaintiffs and defendants acquired, and that they had been recognized as the boundary between the two tracts, and that prior owners of both plaintiffs and defendants had recognized this old fence line as establishing the boundary between the two tracts. Former owners of the properties testified that this old fence line had been recognized as the boundary between the two tracts and that they bought and sold by this fence. It appears from the testimony that this fence did not remain in one fixed location. It consisted principally of three strands of barb wire and was nailed on posts and trees where convenient throughout the entire length of the south boundary of plaintiffs' property. Plaintiffs' property line extends for a distance east and west of more than 7,000 feet. Defendants' property line extends for a distance from east to west of approximately 4,000 feet.
Felix Lovett who formerly owned defendants' tract of land up to 1915, along with his brother, testified that he and his brother constructed a rail fence from the east side of the present boundary in a northwesterly direction up to where the old Lovett home place stood; that subsequent to the construction of the rail fence, a lane was constructed encompassing an old road leading up from the east boundary of the property to this old home place; that he moved off the land in 1915 and it was subsequently acquired by Voliday Jones in 1918, and that it was at that time that a wire fence was constructed all the way across the entire tract or from east to west, which encompassed the south boundary of the tract of land now owned by plaintiffs. Voliday Jones testified that he bought the tract of land and sold the tract of land by the fence, which he considered the boundary. A Mrs. Wilson, later Mrs. Glynn, subsequently acquired both tracts, and in 1928 she sold the lower *653 tract to McGrath, and McGrath inherited the north tract from her in 1932. Mrs. Wilson's son, James P. Glynn, and stepson of Dennis F. McGrath, Jr., testified that when Jones and Bullock bought the north tract, he went around the fence with Mr. Bullock and showed him the boundaries and that the fence was then existing between the two tracts and that it was visible and separated the two tracts and that the fence was actually existing. This testimony was corroborated by Bullock's evidence. Jones and Bullock acquired the north tract in 1935. They moved a part of the fence on the front or eastern boundary in order to provide a pond or watering place for their stock to keep them from bogging down in the quagmire. They also moved a portion of the fence or at least between 500 or 1,000 feet on the rear or the western part of it which separated their property from that of John Jones. Between the point where the fence had admittedly been moved on the east and on the west, the variable distance amounted to 15 or 20 feet.
The Trial Judge, in company with counsel for each side, the surveyor, McCain, and the witness Lovett, went upon the ground after McCain had made his survey and made this observation about the fence after evaluating the testimony of the witnesses as well as examining the visible markings of the fence and other visible boundary marks along the fence line:
"At least seventy-five years ago, when the two properties here involved were under one ownership, a private road ran in a westerly direction near the center line of the property from the public road which formed the eastern boundary of the tract to a point about one-third of a mile west. There the road turned northwest to the residence of the then owner. Some years after the property was divided a fence was built along the north side of this road, or at least along the north side of that portion of the road which ran in a westerly direction. It is not clear as to whether the fence continued up to the residence along the northeast side of that portion of the road which ran in a northwesterly direction, but there is evidence that it did. Old field rows indicate that a portion of the south tract, now owned by defendants, was cultivated. These old field rows come up to the south side of the old road, and where the old road ran in a northwesterly direction they come up to the southwest side of that portion of the old road, crossing the present fence and continuing northward for some distance into what is admittedly the property of plaintiffs. These facts lead to the conclusion that the original fence was built for the purpose of enclosing the property above the road, leaving the road unenclosed. I am convinced that the original fence was never intended as the boundary between the two properties. The present fence is the successor to the original fence, having been extended to the western line of the properties at a later date.
"There is no positive testimony that former owners of the two properties ever recognized this fence as the boundary. The testimony on this point comes from third persons who understood that the fence was the boundary, with similar testimony from the sons and daughters of the late Mr. Dyer, they with their mother being the defendants herein. Mr. Jones, one of the plaintiffs, testified that he and Mr. Dyer had on several occasions discussed the matter of fixing the boundary. The testimony further shows that plaintiffs have maintained the fence since their acquisition of the north tract. On one occasion one of the defendants, while employed by the plaintiff Jones, assisted Mr. Jones in relocating the fence on the western end, at which time the fence, over a considerable part of its length, was moved several feet north, admittedly on plaintiffs' property.
"In my opinion the most conclusive proof that the fence was not recognized *654 as the boundary by the present owners of the two properties is found in connection with the late Mr. Dyer's participation in the Porter survey. It is not disputed that Mr. Dyer was present when Mr. Porter established the western point of the boundary shown by his survey, but it is doubtful if he was present when the eastern point was fixed. The western point was a considerable distance south of the fence. If Mr. Dyer considered the fence as the boundary he would undoubtedly have made some protest or expressed some objection. It does not appear that he did either. I have no opinion as to where Mr. Dyer thought the boundary should be, but I am convinced he did not consider the fence as the boundary."
In view of the testimony the Trial Court had heard and from his actual examination of the location of the fence and his conclusions reached thereon, we are not in a position to say he has committed manifest error.
When a boundary between two properties is created by mutual consent without a survey, we understand that the boundary ought to be fixed as agreed upon and ought to be certain and some evidence contained in the record showing that there was mutual consent in fixing the boundary. The fact that the fence served as a boundary separating the property without any agreement on the part of the respective owners of the property that it would be the boundary, it could not be accepted as conclusive proof that it was the boundary when it shifted from various points back and forth during the period of its existence.
The Supreme Court of this State said, more than fifty years ago, in the case of Williams v. Bernstein, 51 La.Ann. 115, 25 So. 411, with reference to a fence separating adjoining properties placed there by either one or both of the owners, the following:
"The mere fact that parties owning adjoining properties have cultivated land up to a certain line, or up to a certain fence built either by one or both, or built by one and repaired by the other, does not, per se, evidence an adverse possession, or an acquiescence in, knowledge of, or recognition of an adverse ownership or adverse possession. Neighbors constantly run up fences within or beyond the boundary lines, or join fences; doing so with the knowledge and understanding that such acts are merely temporary, and done subsidiarily, to and with reference to, the right of both to ultimately ascertain and fix rights by an action of boundary, or through a formal, legal survey. Until this happens, such land is held in `occupancy,' and not in `adverse possession,'certainly, in the absence of a clear and direct claim advanced of adverse ownership and possession."
and in Gray v. Couvillon, 12 La.Ann. 730, the Court noted the distinction between a fence erected as a boundary and one merely constructed for temporary convenience. Its statement is as follows:
"No such consent as contemplated by law is shown to have been given by the various proprietors to the line of defendant, and it is not proved that they considered it as the recognized and established boundary by which the limits of their lands were determined."
We believe that this fence between plaintiffs' and defendants' property was never recognized or considered by any of the adjoining property owners at the time as a boundary, but was merely for the purpose of convenience and occupancy at the time it was erected.
We are fully supported in this conclusion by our decision in Simmons v. Miller, 170 So. 521, and the decision of the Court of Appeal, Parish of Orleans, in Blanchard v. Monrose, 12 La.App. 503, 125 So. 891; Brown v. Andrews, 1 La. *655 App. 449; Barker v. Houssiere-Latrielle Oil Co., 160 La. 52, 106 So. 672.

Pleas of prescription of 10, 20 and 30 years:
In view of our holding that there was no consent boundary agreed upon or fixed by consent between the owners of the property or the former owners, and it not being contended that there was a survey fixing the boundaries between the two tracts, the pleas of prescription of 10 and 20 years are easily disposed of. The prescription of 10 and 20 years provided for in Article 853 of the LSA-Civil Code, is only applicable where a boundary has been established by survey. This Article reads as follows:
"If the boundaries have been fixed according to a common title, or according to different titles, and the surveyor had committed an error in his measure, it can always be rectified, unless the part of the land on which the error was committed, be acquired by an adverse possession of ten years, if the parties are present, and twenty years, if absent."
Carnahan v. McCoy, La.App., 49 So.2d 78; Rock v. Varuso, La.App., 61 So. 2d 741; Picou v. Curole, La.App., 44 So.2d 354.
With reference to the plea of 30 years' prescription, the record in this case does not show that there was ever any survey made of the line establishing the boundary between the plaintiffs' and defendants' property prior to the one made by Porter in 1949, at the request of plaintiffs and which defendants' ancestor signed. Therefore, defendants must rely upon the visible boundary which they claim has been in existence for more than 30 years. If the fence separating plaintiffs' and defendants' lands or visible vestiges of it had been in existence for 30 years and had remained in practically the same place during the 30 years and separated the properties of plaintiffs and defendants or their authors in title, then their plea of prescription of 30 years could be maintained. Our examination of the evidence in the case leads us to the same conclusion as was reached by the Trial Judge that this fence was first placed along the side of an old road entering the land from the front and extending in a curve in a northwesterly direction. We further find that this fence did not remain in one particular location across the land and that various parts of it from time to time were moved either by the plaintiffs or their authors in title or by the defendants or their authors in title; that after plaintiffs acquired the property to the north of the fence, it was moved further north on their land than it had been theretofore. Prior to that, a portion of the fence on the front portion or east side of the land was moved south of the boundary line which is now contended for by defendants. This fence has been moved at various and sundry times, or certain parts of it from at least 5 to 25 feet in certain places and from 100 to 200 feet in other places, and the exact location of where it was first placed when constructed can not be specifically determined from the evidence.
The District Judge, after hearing witnesses on both sides of the case, testify as to the location of this fence and various parts of it being moved and after having the benefit of three surveys, went upon the property, examined the trees where the wire had been attached, and saw what vestiges or remains of the fence presently existed and constructed and repaired throughout the period of time between 1903 and the time this suit was filed. He concluded that the fence had never been intended to be the boundary between these two properties and ordered that the line be established separating them in accordance with an act of partition between plaintiffs' and defendants' authors in title. He instructed the surveyor to survey and establish a line extending from east to west through the center of this tract of land as originally partitioned by act of partition between Isaac Lovett and wife, and John Lovett and others, pursuant to a judgment in suit no. 2491 on the docket *656 of the 5th Judicial District Court, Parish of East Baton Rouge. This partition was made on July 28, 1877.
Plaintiffs, in opposition to defendants' plea of prescription of 30 years, have advanced a novel proposition of law here which appears to us to be sound. The plaintiffs in the plea of prescription of 30 years, in order to show that they and their authors in title have had 30 or more years' actual possession of the land beyond that which is called for in their deed up to the line of the old fence, have necessarily had to add the possession of their authors in title. Plaintiffs' author in title is the same as that of defendants, both parties having acquired from Dennis F. McGrath, Jr. When Dennis F. McGrath, Jr. acquired the tract of land now belonging to defendants and was the owner of it when he acquired the tract of which the plaintiffs are the present owners, the two tracts being contiguous, the possession exercised by McGrath during his ownership could not have been adverse to himself, and his acquisition of the north tract, while he was the owner of the south tract, interrupted any possession or prescription which was in operation and which would ultimately ripen into a prescription upon which a boundary could be predicated by visible bounds because he was the owner of both tracts. When the possession and ownership of these two tracts were merged into one owner and possessor, if he could prescribe beyond his title, it would be on the exterior boundaries of his title as constituted at the time he acquired the north tract and to land to which he had no record title. His possession of both tracts that were adjoining at the points where the present boundary controversy exists between plaintiffs and defendants could not be considered as possession beyond his title because he had a title to both tracts. His possession of both tracts under record titles interrupted any prior possession insofar as establishing a boundary by adding prior possession to his. The defendants acquired the south tract from McGrath in September, 1933. Therefore, since the prescription under which they claim and which they assert that they have held possession beyond their title would not have continued and been in existence except for a period of 18 years when this suit was filed. Therefore, the possession of the south tract which defendants attempt to add to their possession in order to make up the 30 years' prescription necessary to prescribe by visible bounds against a survey sought by the owner of the adjoining property on the north having been interrupted by a merger of possession and ownership of the two estates, the plea of prescription was properly overruled.
The possession provided for in Article 852 of LSA-Civil Code is possession beyond the title and adverse. Certainly where an owner had title to both tracts, case, as did Mrs. Wilson, or Mrs. Glynn, and Mr. McGrath, they could not prescribe against themselves during the tenure of their ownership, because each of them during their respective ownerships of both tracts had a record title to the parcel of land against which this boundary prescription would have to operate in order to sustain defendants' plea of prescription of 30 years. It is our opinion that there was an interruption of the 30 year boundary prescription during the period of time both tracts were owned by Mrs. Wilson, or Mrs. Glynn, and Dennis F. McGrath, Jr. In order for this prescription to operate, the tracts of land upon which the boundary is sought to be established by visible bounds necessarily have to be owned by different persons, for an owner can not prescribe against himself. LSA-C.C. 3514, 3515. There was no occasion for this prescription to run during the time the ownership of both tracts was vested in the same persons by record title.
"He who has once acquired the ownership of a thing by one title, cannot afterwards acquire it by another title, unless it be to supply a deficiency in the first title.
"On the other hand, nothing prevents a thing due to a person, under one title, from being also due to him *657 under another; as for example, when a thing has been sold, and is afterwards bequeathed to the same person by the owner." LSA-C.C. Article 495.
The plea of prescription of 30 years was properly overruled.
For the reasons assigned, the judgment of the Lower Court is affirmed at appellants' cost.