PONDER, Justice.
 

 The plaintiff, Paul F. Esnard, seeks to establish the boundary line between his property and the property of the defendant, Cologero (Charles) Cangelosi, and to recover $2,300 damages which were allegedly incurred by virtue of the wall of the defendant’s building encroaching upon the plaintiff’s property. After issue was joined, the cause was tried in the lower court, resulting in a judgment in favor of the plaintiff, establishing the boundary line and awarding the plaintiff $1,250 damages. The defendant has appealed.
 

 The reasons for judgment handed down by the Trial Judge correctly state all the
 
 *708
 
 facts involved in this case and properly dispose of the issues raised therein. We can see no purpose gained by any further discussion of the issues herein involved, as we would be compelled to reach the same conclusion. Therefore, we adopt the reasons given by the Trial Judge in disposing of this case as ours, viz.,
 

 “Lots Nos. 2 and 3 of Square No. 3 in that part of the City of Baton Rouge known as Leonard Town are located on the east side of Third Street in that square bounded on the north by Convention Street, on the east by Church Street, on the south by North Boulevard and on the west by Third Street. Each of said lots has a front of 64 feet on the east side of Third Street by a depth between parallel lines of 128 feet. ,
 

 “Prior to the year of 1871 one Jean Dupuy owned a parcel of ground having a front of 85 feet 4 inches along the east side of Third Street. This parcel was composed of all of Lot No. 3 and the southern 21 feet 4 inches of Lot No. 2 or one-third thereof.
 

 “In the year of 1871 Dupuy sold the southern one-third or the southern 21 feet 4 inches of Lot No. 3 to Mrs. Constance Lafitte. A short time thereafter he sold to the same vendee a strip having a front of six inches on .Third Street. The 6 inch strip was just north of the property he had previously transferred to her. Mrs. Lafitte, therefore, acquired a parcel of ground having a front of 21 feet and 10 inches on the east side of Third Street by a depth between parallel lines of 128 feet.
 

 “After the two sales were made to Mrs. Lafitte, Mr. Dupuy died and his wife and others inherited what was left of Lot No. 3, being the northern 42 feet 2 inches, thereof, and the southern 21 feet 4 inches of Lot No. 2, thus giving the heirs of Dupuy a total frontage of 63 feet 6 inches on the east side of Third Street by a depth of 128 feet between parallel lines.
 

 “The property sold by Dupuy to Mrs. Lafitte eventually passed into the hands of Dr. Charles Duchein and will be hereinafter referred to as the ‘Duchein property.’
 

 “The heirs of Dupuy sold the parcel of ground measuring 63 feet 6 inches front on Third Street in the year of 1909 to the Baton Rouge Realty Company, the common vendor for both plaintiff and defendant herein.
 

 , “On the 15th day of- May in the year of 1912, as per act of record in Book 49 folio 153 of the Conveyance Records of the Parish of East Baton Rouge, the Baton Rouge Realty Company sold to Cologero Cangelosi, defendant, herein, the following described property: ‘A certain lot or parcel of ground, together with all the buildings and improvements, thereon, situated in that part of the City of Baton Rouge known as Leonard Town in Square bounded by Convention Street, Church Street, North Boulevard and Third Street, having a' front of twent/-two (22) feet on the east side of Third Street by a depth between parallel lines of one hundred twenty-eight (128) feet, and being the southern twenty-two (22) feet of the northern two-thirds of Lot Three (3), Square Three (3), Leonard Town, as shown by the
 
 *710
 
 official City map of 1910, and being a part of the same property acquired by vendor from Jeannette Dupuy on June 23rd, 1909/
 

 “During the month of May, 1919, or seven years later the Baton Rouge Realty Company sold to Paul F. Esnard, plaintiff herein, the following described property: ‘A certain lot or parcel of ground measuring forty-two feet front on the east side of Third Street in the City of Baton Rouge, and being composed of first, the southern one-third of Lot Two (2), Square Three (3); second, the northern 20.66 feet of Lot Three (3), Square Three (3), Gilbert-Leonard Town, the said square being bounded by Convention Street, Church Street, North Boulevard and Third Street and being a portion of the property acquired by vendor as per act in Conveyance Book 42, Folio 335 of the Conveyance Records of the Parish of East Baton Rouge/
 

 “In the year of 1914 the defendant constructed a brick building on the property purchased by him from the Realty Company and this controversy grows out of the site or location of the north wall.
 

 “In the year of 1921 plaintiff decided to erect a building on the property purchased by him from the Realty Company and when a survey was made he ascertained that the entire northern wall of the Cangelosi building, which is 16 inches in width, was located and resting on his land.
 

 “Plaintiff in this suit seeks to have the boundary line established in accordance with the description of the property and to have it decreed that the north wall of the Cangelosi building encroaches on his property, to have same removed, and for damages for the'alleged encoachment.
 

 “Defendant filed an exception of estoppel which was referred to the merits. He then filed an exception of no cause or right of action which was overruled. Defendant then filed an answer and reconventional demand. Plaintiff filed an amending and supplemental petition. Defendant then filed a second exception of no cause or right of action which was also overruled. And then defendant filed a supplemental and amended answer and reconventional demand.
 

 “Defendant in his original answer and reconventional demand and in his supplemental answér and reconventional demand prayed for the rejection of plaintiff’s demands and in reconvention for the value of the part of the wall plaintiff has been using and the value and use thereof since the Esnard building was constructed. Defendant also interposed the plea of prescription. The case was then tried on the issues as thus presented.
 

 “The first issue or point to be decided is the one of encroachment. If defendant’s north wall does not encroach upon the property of the plaintiff the whole case falls. This point can be easily disposed of for the reason. that defendant’s most able attorney in his brief frankly admits that the north wall of the Cangelosi building does encroach upon the Esnard property and attributes same to an error in the description of the property contained in the sale from the Baton Rouge Realty Company to Cangelosi.
 

 
 *712
 
 “Reverting to that description, we find that the Realty Company sold Cangelosi ‘A certain lot or parcel of ground........ having a front of 22 feet on the east side of Third Street................and being the southern 22 feet of the northern two-thirds of Lot No.
 
 3.................’
 

 “As pointed out in this opinion Lot No. 3 has a front of 64 feet. The Ducheins had purchased the southern 21 feet and 10 inches of this particular lot. The Realty Company became the owner of the northern 42 feet 2 inches, thereof, and it was from this -part that the 22 feet sold to Cangelosi was to be taken.
 

 “Attorney for the defendant in his brief points out the error in the description under which defendant acquired and the defect in defendant’s title. In his brief we find the following language: ‘Now if one is familiar with the documents in the chain of title to Mr. Cangelosi’s property, the error in the description contained in the sale from the Baton Rouge Realty Company is at once apparent. The description says the parcel has a front of 22 feet on Third Street. So far, so good. It then says that the parcel is to be taken from the southern end of the northern two-thirds of Lot No. 3. That could not be done because the southern end of the northern two-thirds of Lot 3 includes 6 inches front of the Duchein property, which did not belong to the vendor, Baton Rouge Realty Company.’
 

 “Defendant was then confronted with this situation. There was not sufficient frontage in the southern end of the northern two-thirds of the lot to comprise the 22 feet sought to be conveyed. This being the case, it was the duty and obligation of defendant to direct the attention of the vendor to the shortage.
 

 “The Realty Company without doubt intended to transfer to Cangelosi just what his title called for, that is 22 feet front on Third Street, but the 22 feet was to be taken at a fixed and designated place, namely, 22 feet on the east side of Third Street and being the southern 22 feet of the northern two-thirds of Lot 3.
 

 “This' is made clear and manifest by the action of the Realty Company approximately seven years later when they sold to plaintiff the northern 20.66 feet of Lot No. 3, this being all that was left of said lot after deducting the southern 22 feet from the northern two-thirds sold to Cangelosi.
 

 “The fact that it was impossible to take the 22 feet sought to be conveyed to Cangelosi from the southern end of the northern two-thirds of the lot without encroaching on the Duchein property, gave defendant no right or authority to make up the shortage by encroaching on the northern 20.66 feet not included in the description and subsequently sold to plaintiff.
 

 “Plaintiff in his petition requested the court to appoint and direct a surveyor to inspect the premises and make a survey of the lands in controversy. In response thereto, the court appointed and directed R. Swart an able, competent and efficient surveyor and civil engineer to make a survey of the contiguous lands in controversy and ascertain their true limits.
 

 
 *714
 
 “The surveyor made the survey and a blue print of the property in question and testified on the trial of the case. His survey, blue print and testimony disclose that no part of the north wall of the Cangelosi building, 16 inches in width, rests on property acquired by Cangelosi, but to the contrary the entire wall is resting on the Esnard property.
 

 “Attorney for defendant in his brief seeks to justify, mitigate or excuse the encroachment by attempting to show on the trial of -the case that Mr. Cangelosi was and is not conversant with legal or surveying terms used in the description of property nor with the maps of the City of Baton Rouge.
 

 “It is true that the defendant did testify on the trial of the case that he was not conversant with legal or surveying terms and was not familiar with the maps of the City of Baton Rouge. But in the opinion of the court his knowledge or lack of knowledge in this respect is immaterial for the reason that before starting construction he employed a competent and efficient surveyor to lay off and survey the 22 feet which he had purchased.
 

 “The defendant when called to the witness stand for cross-examination under the hostile witness act denied that there had been any discussion about his title being defective at the time R. Swart, Sr., surveyed the 22 feet in question. On page 8 of the Transcript, we find the following questions and answers:
 

 “ ‘Q. Is it not a fact that you made the statement in the presence of Mr. Jack Troy during the time this survey was being made by Mr. Swart, before the construction of this building was undertaken, that that line was off, or that Mr. Swart made that statement to you in the presence of Mr. Troy? A. No. He never gave me any signed statement. He just gave me the right point for my twenty-two feet.
 

 “ ‘Q. Didn’t you understand before you started the construction of your building that there was some trouble about the location of that north line? A. No. I never knew that before.
 

 “ ‘Q. When did you find that out ? A. I, found that out after Mr. Esnard bought it. He told me that himself.’
 

 “When placed on the witness stgnd in his own behalf at a later date he finally admitted that there had been a conversation between him and the surveyor about the title being defective, as may be seen by referring to page 115 of the Transcript, as follows:
 

 “ ‘Q. There has been some testimony here the other day about Mr. R. Swart, Senior’s, survey that he made of your property to locate the lines of your building just before it was built. Do you remember any particular things about that survey? A. Oh, yes. I saw Mr. Swart survey my twenty-two feet.
 

 “ ‘Q. You engaged him to do that for you? , A. Yes.
 

 “ ‘Q. While he was doing that surveying, did you ever have any conversation with him about the survey? A. Well, I told him I wanted to survey my twenty-two feet. I was across the street and I saw him one day measuring, and I saw
 
 *716
 
 him the next day measuring it over again. I asked him what he was doing — “you ain’t through?” He said, “No. I am getting through today.” He said, “I had to move those pegs a little farther. I found something on the title.” I didn’t know what he meant. I said, ‘fAll right. Don’t forget. Give me twenty-two feet,” and he put my peg there, and I followed that peg when I built.
 

 “ ‘Q. He did not tell you that he was encroaching on anybody’s property or anything like that? A. I don’t remember anything like that.’
 

 “One Jack Troy was called by plaintiff and testified that he heard a discussion between the surveyor and Cangelosi at the time the survey was being made and heard the surveyor tell Cangelosi ‘that he was over the line’ and Cangelosi said ‘Go ahead, that is all right. Nobody will know.’
 

 “On the trial of the case R. Swart, Jr., the surveyor appointed by the court to make the inspection and survey of the property in dispute, the son of the surveyor who surveyed the 22 feet for Cangelosi, produced in court the records and notes of his father and testified that his father’s notes and records showed the 22 feet in the same relative position with the lot lines as shown on the map prepared and filed by him, R. Swart, Jr. Counsel for plaintiff asked him several questions about the survey made by his father for Cangelosi, the most pertinent being, as follows:
 

 “ ‘Q. Is there anything in that survey which conflicts with what your survey shows? A. No. I would say that they coincide.’
 

 “This witness, also, testified that the defendant had erected a building measuring 22 feet and 2 inches from the center of the north wall of the Cangelosi building to the center of the south wall of said building.
 

 “The testimony of the witness Troy, the notes and records of R. Swart, Sr., the testimony and blue print of R. Swart, Jr., the action of the defendant in erecting a building 22 feet and 2 inches wide when he owned only 22 feet, and the admission of defendant that he had discussed the defect in his title with R. Swart, Sr., before the wall was erected, carefully weighed and considered, leaves the court thoroughly convinced that the defendant was fully cqgnizant of the defect in his title previous to the erection of his building.
 

 “Having arrived at this conclusion, it will not be necessary to discuss the plea of prescription of ten years interposed by defendant.
 

 “The next issue presented for determination is the exception or plea of estoppel. Counsel for defendant urges and contends that plaintiff is estopped from disputing the boundary line between the properties in question, for the reason that plaintiff constructed his building against the north wall of the Cangelosi building and hitched the roof of the Esnard building to the said north wall of the said Cangelosi building.
 

 “The testimony material to and in reference to the issue presented by this exception discloses that the Cangelosi building was erected in the year of 1914. The Baton Rouge Realty Company sold to Esnard in the year of 1919. Plaintiff de
 
 *718
 
 cided to build in the year of 1921 and had plans drawn and prepared by an architect for a building to cover the 42 feet called for in his title, and to use the Cangelosi wall as a party wall. Before starting construction, plaintiff had his property surveyed and at that time discovered that the north wall of the Cangelosi building was located entirely upon his property.
 

 “Plaintiff at that particular time was conducting and operating a jewelry shop or store in a building which he was renting on the opposite side of Third Street. He had received notice from the landlord to vacate and it was necessary and imperative for him to build immediately.
 

 “Plaintiff endeavored to make arrangements or adjust the matter with defendant when he learned of the encroachment, and being unsuccessful was forced to revise his plant, so as not to use the Cangelosi north wall as a party wall and so that his southern wall was of a temporary nature, made of two by six studs, 16 inches apart and having no support from the encroaching brick wall. The two walls were very close together at the top. In order to prevent water from running down between the walls plaintiff plastered his roofing paper to the side of the brick wall.
 

 “Plaintiff expecting to have an early adjustment of the dispute, and the south wall of his building being of a temporary nature, and to conserve space and money did not finish the stud wall on the outside by putting a cement plaster thereon.
 

 “As pointed out in plaintiff’s brief defendant now contends that because plaintiff has laid the roofing paper against the brick wall to keep out the rain and because the brick wall sheltered and protected the unfinished stud wall, plaintiff has used the brick wall to such an extent that he is now estopped from requesting its demolition.
 

 “Defendant has sought to show a state of facts that would bring this case under the principle discussed at length in the case of Barker v. Houssiere-Latreille Oil Company, reported in the 160 La. page 52, 106 So. page 672.
 

 “The court is of the opinion that the exception or plea of estoppel is without merit for the reason that there was no joining of the walls, no use by plaintiff of the brick wall other than was barely necessary to keep the water out and no acquiescence by plaintiff in the encroachment.
 

 “The. testimony discloses that plaintiff made numerous and reasonable efforts to obtain an adjustment or settlement of the boundary dispute after learning of the encroachment and defendant cannot set up the defense that plaintiff was guilty of laches in this respect.
 

 “Counsel for defendant urges and contends that when in an act of conveyance of immovable property the description of the property conveyed is ambiguous, the identity of the property should be determined by the intention of the parties as shown by the act itself and the surrounding circumstances.
 

 “This statement of the law is correct. But in the opinion of the court there is very little if any ambiguity in the description. The Realty Company sold to Cangelosi and Cangelosi was to receive 22 feet
 
 *720
 
 on the east side of Third Street. Now where was the 22 feet to be taken from the northern end or the southern end? The description is, as follows:
 
 ‘A
 
 certain lot or parcel of ground having a front of 22 feet on the east side of Third Street and being the southern 22 feet of the northern two-thirds of Lot No. 3.’
 

 “If the description had designated the northern end there would have been no controversy or confusion as the Realty Company owned a sufficient frontage on that side, or end.
 

 ■ “If you take the southern 22 feet off of the northern two-thirds of the lot there would be left in that northern two-thirds exactly 20 feet 8 inches or 20.66 feet, or the 20 feet 8 inches sold to Mr. Esnard. By no stretch of the imagination could it be said that Mr. Cangelosi was to receive his 22 feet at any place or point other than that designated by the description.
 

 “The preponderance of the evidence sustains the conclusion that R. Swart, Sr., at the time he surveyed the 22 feet told and warned the defendant of the defect in his title and that Cangelosi ignored the warning and encroached upon the 20.66 feet not covered by the description in the act of sale by which he acquired.
 

 “The court fully realizes that there should be strong reasons to sustain a demand to demolish a side wall of a two story brick building, but the testimony -discloses that the wall is on the property of plaintiff, and under the provisions of Article 508 of the Civil Code, plaintiff has a clear and legal'right to demand the demolition and removal from his premises of the encroaching wall. Barker v. Houssiere-Latreille Oil Company, 160 La. 52, 106 So. 672.
 

 "Plaintiff by original and supplemental petitions has prayed for damages in the sum of $3,650, representing loss of the use of space taken up and used by the wall in question. This claim is rather speculative and the proof thereon somewhat sketchy. It must be borne in mind that the plaintiff could have had this controversy determined by the courts at any time after he discovered the encroachment.
 

 “The court is of the opinion that it would not be just and fair at this late day to grant the full amount praygd for. The sum of $1,250 on this particular claim will be awarded plaintiff.
 

 “For the reasons assigned above judgment will, therefore, be signed overruling the exceptions of prescription and estoppel filed by defendant and denying and rejecting the demands contained in defendant’s reconventional demand.
 

 “Judgment will also be signed in favor of plaintiff and against defendant fixing the boundary between plaintiff’s and defendant’s property on a line 20 feet and 8 inches parallel to and south of the southern line of Lot 2 Square 3 or 113 Gilbert and Leonard Town.
 

 “Judgment will also be signed condemning, ordering and requiring the defendant to demolish and remove from plaintiff’s premises the encroaching wall.
 

 “Judgment will also be signed in favor of plaintiff and against defendant in the sum of $1,250, representing plaintiff’s loss
 
 *722
 
 of the use of the space occupied by the brick wall, and all costs of this suit.”
 

 For the reasons assigned the judgment is affirmed at appellant’s cost.
 

 O’NIELL, C. J., and McCALEB, J., concur in the decree, ■ except as to the allowance of $1,250 for loss of the use of the space occupied by the brick wall, the amount being considered excessive and the claim being— in their opinion — at least partly barred by prescription.
 

 ROGERS, J., concurs in the decree except as to the allowance of $1,250 as damages.