225 So.2d 729 (1969)
Hal S. MOREHEAD, Plaintiff-Appellant,
v.
Glenn O. SMITH, Defendant-Appellee.
No. 11156.
Court of Appeal of Louisiana, Second Circuit.
March 3, 1969.
On Rehearing June 26, 1969.
*730 Hendrick, Fant, Sexton & Bain, Shreveport, for plaintiff-appellant.
Abramson, Maroun & Kaplan, Shreveport, for defendant-appellee.
Before AYRES, BOLIN and PRICE, JJ.
PRICE, Judge.
This action was brought by the plaintiff, Hal S. Morehead, against the defendant, Glenn O. Smith, for a judicial determination of the boundary between their properties, which are contiguous lots in the city of Shreveport. Plaintiff also requested the Court to order the removal of a portion of a commercial building constructed by defendant which is alleged to encroach on his property. In the alternative, plaintiff suggested that should the Court find that an encroachment existed, but that the removal of the encroaching portion of the building would be impractical and inequitable, that plaintiff should then be awarded *731 the sum of $10,000.00 for any forced sale of this portion of his property ordered by the Court. Plaintiff also sought the sum of $5,000.00 for damages allegedly suffered because of the encroachment of defendant's building. The District Court appointed John Bowman, a licensed surveyor, to make a survey of the premises in question and then report to the court. The survey and written report of Mr. Bowman, filed with the court, reflected an encroachment by the building owned by defendant on the plaintiff's property of 2.34 feet at the front of the building and 2.04 feet at the rear. After trial on the merits, the district court accepted Mr. Bowman's survey as being a correct determination of the boundary and found that the building of defendant did, in fact, encroach on the property of plaintiff. The court further found from the evidence that the defendant was in good faith in constructing his building over the line of plaintiff's property and that the cost of removing the wall would be so great that it would be inequitable to cause defendant to remove same.
The court granted judgment ordering plaintiff to sell defendant that portion of his property on which defendant's building encroached for the sum of $370.00. The court did not allow any damages for trespass as claimed by plaintiff. From this judgment plaintiff has appealed.
In his assignment of errors the appellant asserts that the trial court was in error in not ordering the removal of the portion of defendant's building which encroached on plaintiff's property. Secondly, the appellant contends the trial court erred in not allowing damages for the trespass committed on plaintiff's property, and that the amount fixed by the trial court for the value of plaintiff's property ordered sold to defendant was inadequate.
Defendant-appellee contends that the trial court erred in accepting the survey of the court appointed surveyor in fixing the boundary between the properties over the testimony of defendant's experts, who testified it was erroneous.
The undisputed facts leading up to this controversy are substantially as follows:
On August 22, 1963, the plaintiff purchased the North Half of Lot 9 of the Southern Heights Annex, as per map of same in Book 100, at Page 108 of the records of Caddo Parish. On the same date the defendant purchased from the same vendor the South Half of this same lot. The defendant began construction of a commercial building on his lot in September, 1963, and the plaintiff began construction of his building approximately one month later. Defendant located his building on his lot in accordance with a survey made by J. C. McLemore, a registered surveyor who was employed prior to beginning of construction.
Plaintiff became aware that a variance might exist in the lot lines along Line Avenue and had a survey made of his lot. This survey reflected that defendant's building impinged on the lot belonging to plaintiff. The building of defendant was substantially completed when plaintiff learned of the possible encroachment and advised defendant thereof. The parties were unable to amicably settle the matter and this action was brought.
We shall first discuss the defendant's contention that the district court erred in fixing the boundary between these properties. The recorded plat of the subdivision reflects that the lot in question is almost rectangular in shape and has a frontage of 101.36 feet along Line Avenue with a depth of 196.13 feet. It is bounded on the south by Lassus Street and on the north by South Ridge Subdivision. South Ridge Subdivision was a resubdivision of Lot 16 of Southern Heights and from this resubdivision three lots were laid off facing Line Avenue lying between Lot 9 of Southern Heights and Oak Hills Drive.
The recorded plat of Southern Heights Annex relates the northwest corner of the subdivision to the west one-quarter corner of Section 19, Township 17 North, Range 13 West, of Caddo Parish. All surveyors *732 who testified in this matter used this quarter corner as a beginning point. The original iron pipe marking this quarter corner had been removed at the time Line Avenue was paved and it was necessary that this corner be re-established by use of reference. The court appointed surveyor, Mr. Bowman, testified that he used field notes and data on file with the Engineering Department of the City of Shreveport in establishing this corner. He further testified that the recorded call distance from the quarter corner of Section 19, as located by him, to the northwest corner of the Southern Heights Subdivision was found to check out properly. He testified that iron pipes were found at the northwest and southwest corners of Lot 9. The iron pipe found at the southwest corner was 3.8 feet south of the north curb of Lassus Street. He was of the opinion that the recorded distance of 101.36 feet was available for Lot 9. Mr. Robert Aillet and Mr. George Dutton, registered Civil Engineers, each testified on behalf of plaintiff and their testimony corroborated Mr. Bowman's position that the recorded distance for the east line of Lot 9 was in existence on the ground.
Mr. J. C. McLemore, the defendant's principal witness, made a survey of the lot in question for defendant prior to the beginning of construction of defendant's building. He testified that there was a shortage of actual measured distance between the south line of Oak Hills Drive (the north boundary of Southern Heights Annex) and the south line of Lot 9 of this subdivision from the distance called for on the recorded plat of the subdivision.
Mr. McLemore gave the following explanation of the difference in his findings from those of the other surveyors who testified in the case in his testimony on cross-examination:
"Q. The question I have is with regard to if there is a variation, can you relate why Mr. Aillet from my information indicates fifty and sixty-eight hundredths feetfifty and sixty-eight hundredths feet on the two lots, realizing that you prorated, but trying to place in my own mind how he can relate fifty and sixty-eight hundredths feet on the front footage of both of these lots, as well as the footage that he shows on the other lots in the area, which seems to be of no variation from the footage here.
"A. Well, that is real simple. He has taken one and three-tenths feet out of Oak Hills Drive and given it to the property owners, and he has taken two and fifty-two hundredths out of Lassus Street and given it to the property owners, and I don't think you can give the property owners a dedicated street.
"Q. In other words, it is your testimony that the dedicated streetson both of these portions you are indicating that the variation is due to the dedicated street being laid properly and measured properly as opposed to the area in between?
"A. I say that the streets were laid out and dedicated, and when they were laid out and dedicated, they created a shortage. There wasn't as much property in there as the old Kane Agricultural College Subdivision record map says there is, and all I can do is repeat myself, that you cannot give dedicated streets in my opinion to anybody."
From an examination of the various maps of surveys filed in evidence this explanation by Mr. McLemore seems to be accurate. Even by reference to the map prepared by the court-appointed surveyor, Mr. Bowman, it can readily be seen that the required called distance of Lot 9 can only be attained by placing the southwest corner of the lot 3.8 feet inside the existing north curb on Lassus Street. The position taken by Mr. McLemore, we believe, is supported by Articles 843 and 851 of the *733 Louisiana Civil Code contained in Book II, Title V, Of Fixing the Limits, and of Surveying of Lands.
Article 843 reads thusly:
"In matters of limits, reference must be had to ancient titles, unless it be proved that the bounds have been since changed, or that the land has been increased or diminished by changes caused by successions, by the will of the owner or by other events."
It is apparent that the limits of the subdivision as intended by the original plat of same have been changed by the laying out of the dedicated streets, which diminished the frontage along the west line of the subdivision bordering Line Avenue.
Article 851 reads as follows:
"If the titles exhibited call for a greater or less extent of land than the land which is to be bounded, contains, the limits must be so fixed as to divide proportionally among the parties interested the profit or loss resulting from this state of things.
"It is understood that the rules prescribed in this and the preceding articles, only take effect in the absence of possession by one or more of the parties, sufficient to establish prescription."
The provisions of this article would apparently justify Mr. McLemore's actions in proportioning the loss among all lots facing along Line Avenue so that the entire loss would not fall on one owner. These parties did not purchase their respective properties by metes and bounds. They each purchased one-half of Lot 9 of this subdivision. Should there be any variance in actual measure from that reflected on the recorded plat, the actual measure should control. We do not feel that it is material who purchased first in this situation.
Mr. McLemore testified that the building of defendant was .125 feet south of the dividing line at the front and .45 feet south of the line at the rear. He did not, therefore, find any encroachment by the building of defendant on the North Half of Lot 9, owned by plaintiff.
We believe that the evidence in this case, and the law, best supports the survey prepared by Mr. McLemore.
For the foregoing reasons the judgment herein appealed from is reversed and it is ordered, adjudged and decreed that there be judgment in favor of defendant, Glenn O. Smith, and against the plaintiff, Hal S. Morehead, fixing the boundary between the South Half of Lot 9 of Southern Heights Annex as per plat in Book 100, at Page 108 of the Conveyance Records of Caddo Parish, Louisiana, and the North Half of the aforesaid lot as being a line running perpendicular to the east line of Line Avenue, beginning 49.925 feet north of the north curb line of Lassus Street, and more particularly being a straight line running east and west from Line Avenue to the rear of Lot 9, through a point situated.125 feet north of the base of the northwest corner of the building situated on the south one-half of said lot and a point situated.45 feet north of the northeast corner of said building.
All costs incurred in the trial court and of this appeal are to be paid equally by plaintiff and defendant.
BOLIN, Judge (dissenting).
The majority opinion reverses the judgment below and renders judgment in favor of defendant. As defendant has neither appealed nor answered the appeal this court cannot grant him affirmative relief. (Louisiana Code of Civil Procedure, Article 2133). For this reason I respectfully dissent.

ON REHEARING
BOLIN, Judge.
We granted a rehearing primarily to determine whether this court had improperly *734 granted affirmative relief to defendant who had neither appealed nor answered the appeal. However, the rehearing being unrestricted, we have reexamined the entire case.
As the background and nature of the litigation are adequately set forth in our original opinion, we shall proceed directly to the questions at issue.
The only allegations of Morehead's petition relating to the removal of any structure encroaching on his property and for damages are as follows:
"12.
"Petitioner avers that it is, therefore, necessary that a judicial fixing of the said boundary line be made, in the manner prescribed by law; that a surveyor of this city be appointed by the Court and sworn for the purpose of examining and of making a survey of the said contiguous lands of petitioner and defendant, and of ascertaining the correct limits of their respective properties in order that the said commercial building may be removed to the correct dividing line.
"13.
"Petitioner avers, in the alternative, that should the Court find that the building in question could not be removed without destruction of the building, and that said destruction would be an unjust remedy to the situation, then petitioner desires the Court to set and award damages for the trespass and encroachment of said building on his property for the past three years, said damages for trespass to be fixed in the sum of FIVE THOUSAND AND NO/100 DOLLARS ($5,000.00), and that the Court award an additional TEN THOUSAND AND NO/100 DOLLARS ($10,000.00) as a "forced-sale" purchase price for the strip of land extending from the westerly property line on Line Avenue to the rear of said property, the same being 186.13 feet by 2.26 feet."
After a painstaking study of the record we are now convinced we were in error in failing to agree with the trial judge in accepting Mr. Bowman's survey as reflecting the correct boundary between the properties. We further agree with the finding of the lower court that Smith was in good faith in constructing his building partially on Morehead's property. Under these findings and the allegations of Morehead's petition the remaining issue is the type of relief to which Morehead is entitled under Louisiana Civil Code Article 508, providing:
"When plantations, constructions and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them or to compel this person to take away or demolish the same.
"If the owner requires the demolition of such works, they shall be demolished at the expense of the person who erected them, without any compensation; such person may even be sentenced to pay damages, if the case require it, for the prejudice which the owner of the soil may have sustained.
"If the owner keeps the works, he owes to the owner of the materials nothing but the reimbursement of their value and of the price of workmanship, without any regard to the greater or less value which the soil may have acquired thereby.
"Nevertheless, if the plantations, edifices or works have been made by a third person evicted, but not sentenced to make restitution of the fruits, because such person possessed bona fide, the owner shall not have a right to demand the demolition of the works, plantations or edifices, but he shall have his choice either to reimburse the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil."
Judgment ordering demolition of a structure is a harsh remedy and should *735 be granted only in an exceptional case and in strict compliance with law. In the first three paragraphs of Civil Code Article 508 the owner is granted the "right" to compel the demolition of encroachments or works at the expense of the person erecting them or to keep the works by reimbursing the other party for the value of the materials and the price of the workmanship. However, the first three paragraphs of Civil Code Article 508 are not relevant to the instant case for at least two reasons. First, Morehead's petition, when considered as a whole, does not seek removal of the encroachment should "the court find that the building in question could not be removed without destruction of the building, and that said destruction would be an unjust remedy * * *". The evidence is uncontradicted that the only way to remove the building, which is a brick structure with a concrete foundation, is to destroy the entire building. A second reason for refusing to order the removal of the building is that Smith was in good faith and, as a consequence, Morehead's choice of relief under Civil Code Article 508 is limited to one of those found in the last paragraph of the article, which provides in part:
"* * * the owner shall not have a right to demand the demolition of the works, plantations or edifices, but he shall have his choice either to reimburse the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil."
Reviewing Morehead's petition we find he does not seek relief under the last quoted portion of the Civil Code article.
From the facts found by the trial judge, in which we have expressly concurred, Morehead is entitled to relief only under his alternative plea appearing in Article 13 of his petition, quoted supra. Morehead seeks an award for damages and an additional award for a "forced-sale" from Morehead to Smith of the strip of land upon which Smith's building encroaches.
The controversy before us, therefore, clearly involves a demand in equity, which is authorized by Louisiana Civil Code Article 21. Gordon v. Fahrenberg & Penn, 26 La.Ann. 366 (1874) was a contest for the ownership of land wherein one of the defendants constructed a frame building partly on plaintiff's land. Among other things, the court held the plaintiff could not keep the structure by paying the defendant the cost of construction because the building was not entirely on plaintiff's land. In its opinion the court said:
"There being no express law applicable to a case like this, we think it equitable (Revised Code, article 21), to allow the defendant, D. B. Penn, to remove that part of the construction erected by him resting on the soil of the plaintiff."
While we recognize the facts in Gordon are different from those in the instant suit, the case does hold, where the precise factual situation is not covered by other codal articles, that Civil Code Article 21 may be resorted to in instances where a building is found to encroach on another's property. For other cases, not factually in point but containing enlightening language relevant to the issue before us, see Esnard v. Cangelosi, 200 La. 703, 8 So.2d 673, (1942); Barker v. Houssiere-Latreille Oil Co., 160 La. 52, 106 So. 672, (1925); and Venta et al. v. Ferrara, 195 La. 334, 196 So. 550, (1940). Also, see "Encroaching Walls Balancing Equities", Vol. V, Louisiana Law Review 141 (Dec.1942) for case note on Esnard, supra.
In his reasons for judgment the trial judge found the defendant's building had, in fact, encroached upon plaintiff's land. However, since defendant was found to be in good faith when the building was erected, the trial judge concluded plaintiff was entitled to recover the reasonable value of the property taken and the expense and loss that he incurred. Parenthetically, it should be noted the lower court, after determining removal of the building would result in great loss to defendant and be an inequitable solution *736 to the problem, adopted the alternative plea of plaintiff to the extent of granting plaintiff recovery for the "forced-sale" price of the encroached strip of land.
Having concluded the lower court correctly found defendant in good faith and agreeing the encroachment actually exists, we have reexamined the testimony of the witnesses to determine the fair value of the land and the damages sustained by plaintiff. Only one expert appraiser, Mr. O. L. Jordan, called by defendant, testified to the value of the property. He calculated the value, using certain comparables, on the square foot basis arriving at the sum of $128.77. However, the court took notice of the fact the property fronted on a through thoroughfare and considered the more equitable method of evaluating the property would be on a front-foot basis. The deed from plaintiff's vendor recited a consideration of $8,000, and based on this value the court placed a front-foot value of $370 on the property in question. We consider this is a fair value for the strip of land which was shown to be used for drainage between the buildings of plaintiff and defendant.
With regard to plaintiff's complaint that the encroachment deprived him of access to the rear of his building, Mr. Bowman, the court-appointed surveyor, found defendant's building encroached upon plaintiff's lot a distance of 2.34 feet along Line Avenue; that this encroachment ran easterly 186.13 feet between the two lots, narrowing to 2.04 feet along the east side of the lot. However, Bowman's survey shows plaintiff's building is only 3.79 feet from the south line of his property. Therefore, even if defendant had constructed his building only to the property line there would have been insufficient space for passage of a motor vehicle. We conclude, as did the trial judge, plaintiff has suffered no damage in this respect.
The judgment of the lower court ordered judgment in favor of plaintiff for $370 and further ordered plaintiff to convey and deliver to defendant that part of the north one-half of Lot 9 of Southern Heights Subdivision, referred to above and more fully described in the judgment. It was further provided, should the plaintiff not issue a formal act of sale to the property described within ten days after the judgment becomes final, the judgment shall have the effect of recognizing the defendant, Glenn O. Smith, as owner of the described real property.
Being in full accord with the findings of the lower court, the judgment appealed from is affirmed, cost of this appeal to be paid by appellant.