379 So.2d 56 (1979)
Herbert C. PORTERFIELD, Plaintiff-Appellee,
v.
James A. SPURGEON, Defendant-Appellant.
No. 7230.
Court of Appeal of Louisiana, Third Circuit.
December 19, 1979.
Rehearing Denied February 4, 1980.
Writ Refused March 21, 1980.
*57 Tillman & Mitchell, F. Clay Tillman, Jr., Leesville, for defendant-appellant.
Smith, Ford & Clark, S. Chris Smith, III, Leesville, for plaintiff-appellee.
Before CUTRER, STOKER and DOUCET, JJ.
DOUCET, Judge.
This is a boundary action brought by Herbert C. Porterfield against James A. Spurgeon to fix the boundary between their respective properties in Vernon Parish. The parties are the record owners of contiguous forty acre tracts. Both claim the ownership of a strip of land located in the East half (E ½) of the Northeast quarter of the Southwest quarter (NE ¼ of SW ¼) of Section 3, Township 2 North, Range 6 West, Vernon Parish, Louisiana. The disputed property is presently in defendant's possession.
The record discloses that the forty acre tracts presently owned by plaintiff and defendant were both owned at one time by defendant's father, E. E. Spurgeon. Defendant's property, which came to be known in his family as the "east forty", was purchased by his father from Forest Lumber Company, a Delaware Corporation, on December 28, 1943. Plaintiff's property, referred to by defendant's family as the "west forty", was purchased by E. E. Spurgeon from Forest Lumber Company on March 20, 1944.
In 1955, E. E. Spurgeon sold the easternmost portion of the west forty to Dr. R. E. Dupre. Dr. Dupre purchased additional acreage in 1957, which resulted in his owning the eastern thirty acres of the tract. Defendant eventually acquired the remaining ten acres in the west forty and the entire east forty from his father.
On January 21, 1976, plaintiff purchased the thirty acres conveyed to Dr. Dupre from Dr. Dupre's succession. He had previously purchased the other ten acres in the west forty from defendant. In November of 1976, plaintiff had his property surveyed by Charles C. Wise, a registered land surveyor. That survey showed that defendant was encroaching on the eastern side of plaintiff's property to a depth ranging from 240 *58 feet on the north to 53 feet on the south. On February 8, 1977, plaintiff filed this suit, asking to be sent into possession of the property and to be awarded damages allegedly resulting from defendant's possession of it.
Defendant filed exceptions of ten and thirty years prescription acquirendi causa, which were tried and overruled. After a trial on the merits, the district court rendered judgment in favor of plaintiff and against defendant, recognizing plaintiff as owner of the disputed property and fixing the boundary as that shown in the survey plat prepared by Charles C. Wise. The judgment denied plaintiff's claim for damages but reserved his right to sue for any future damages. From that judgment and the denial of his motion for a new trial, defendant appeals.
The issues presented for our resolution here are:
(1) whether the trial court erred in overruling defendant's exception of thirty years prescription;
(2) whether the trial court erred in overruling defendant's exception of ten years prescription; and
(3) whether the trial court erred in denying defendant's motion for a new trial.

THIRTY YEARS PRESCRIPTION
It was established at the trial of the exceptions that the disputed property is bordered on the east by the boundary fixed by the court pursuant to the Wise survey and on the west by a fence originally constructed by E. E. Spurgeon. Defendant testified that the fence had been built when his father purchased the east forty in 1943, and was based on an old land line pointed out by an employee of Forest Lumber Company. The trial court found, however, that the fence had been built in 1944 after defendant's father had purchased the second forty acre tract.
It is undisputed that defendant's father continued to possess the disputed property after the sale to Dr. Dupre in 1955. After defendant purchased the east forty from his father, he continued the possession up to the old fence, which he replaced in the late 1960's. In addition to replacing the fence, defendant's acts of possession included using part of the land as a wrecking yard for abandoned vehicles and constructing roughly half of his home on the property.
It is well settled that where two tracts of land have a common owner there can be no adverse possession because an owner cannot prescribe against himself. LSA-C.C. art. 3514; Fiorello v. Knecht, 334 So.2d 761 (La.App. 4th Cir. 1976); Babin v. Montegut Insurance Agency, Inc., 271 So.2d 642 (La.App. 1st Cir. 1972). Defendant argues that that rule should not apply to this case, because his father began adverse possession of the property after he bought the first forty acre tract in 1943 but before he purchased the second tract in 1944. We disagree. His father's ownership of the two tracts from 1944 until 1955 caused an interruption of any adverse possession begun prior to 1944. Jones v. Dyer, 71 So.2d 648 (La.App. 1st Cir. 1954). The trial court correctly concluded that adverse possession could not have begun again until after the sale to Dr. Dupre in 1955.
We conclude that defendant's exception of thirty years acquisitive prescription was properly overruled.

TEN YEARS PRESCRIPTION
The trial court overruled defendant's exception of ten years acquisitive prescription because it found that defendant did not have a deed translative of title to the disputed property. LSA-C.C. Arts. 3474 and 3478; Matthews v. Carter, 138 So.2d 205 (La.App. 2nd Cir. 1962); Orr v. Talley, 84 So.2d 894 (La.App. 2nd Cir. 1955). We find no error in that ruling.
Ledoux v. Waterbury, 292 So.2d 485 (La. 1974), which is cited by counsel for defendant in his brief, is inapposite. In that case, the property description in the defendant's deed included the disputed property by referring to a boundary line on a recorded survey plat, which was later found to have been erroneous. In the present case, it is *59 clear that the disputed property was not described in E. E. Spurgeon's deed from Forest Lumber Company or in defendant's deed from E. E. Spurgeon.

MOTION FOR NEW TRIAL
The question of whether the trial court erred in denying defendant's motion for a new trial is a more difficult one. Defendant applied for a new trial in an effort to have the judgment modified to limit plaintiff's remedies under it. As we noted earlier, defendant's home, which he built in 1967, straddles the boundary, such that roughly half of it encroaches on plaintiff's property. Because it is constructed of brick veneer and rests on a concrete slab, the portion that encroaches on plaintiff's property cannot be removed without demolishing the entire structure. Defendant argues that plaintiff should not be allowed to force him to tear down his home by obtaining a writ of possession pursuant to the judgment recognizing him as owner of the property.
Defendant relies on the decision of the court in Morehead v. Smith, 225 So.2d 729 (La.App. 2nd Cir. 1969), wherein the court declared that a "Judgment ordering demolition of a structure is a harsh remedy and should be granted only in an exceptional case and in strict compliance with law". We agree with that principle, and we recognize that although the judgment appealed by defendant does not expressly order the demolition of his home, it makes that remedy available to plaintiff. Since the judgment recognizes that plaintiff is entitled to be put into full possession of the disputed property, he may obtain a writ of possession and require defendant to tear down his home in order to remove the portion of it that encroaches.
At the time that plaintiff's petition was filed, the legislature had not addressed the issue of what remedies are available to a landowner when structures built on neighboring property encroach. LSA-C.C. art. 670, which was enacted by the legislature as part of Act 514 of 1977, deals specifically with the problem of encroachment, however, it did not go into effect until January 1, 1978, several months after this suit was brought.[1]
LSA-C.C. art. 508 deals with constructions made by a possessor on the land of another.[2] It does not deal with constructions that merely encroach, however, and difficulties arise when it is applied to such cases. Since the early case of Gordon v. Fahrenberg & Penn, 26 La.Ann. 366 (1874), it has been recognized that a landowner may not elect to keep an encroaching structure by paying the construction costs, because the building is not entirely on his land. Thus, it has been uniformly held that *60 when a possessor in bad faith encroaches on the land of another, the proper remedy is the removal of the encroachments and the payment of damages. Esnard v. Cangelosi, 200 La. 703, 8 So.2d 673 (1942); Barker v. HoussiereLatreille Oil Co., 160 La. 52, 106 So. 672 (1925); Gordon v. Fahrenberg & Penn, supra.
Unfortunately, Article 508 offers no guidance to courts faced with the task of granting relief to a landowner when a good faith landowner has encroached. The fourth paragraph of that article provides that the landowner does not have the right to demand demolition of the constructions in such cases, however, as we noted earlier, according to well-settled Louisiana jurisprudence, he may not elect to keep an encroaching building either. In Morehead v. Smith, supra, the court concluded that there were no statutory provisions covering such cases, and that LSA-C.C. Art. 21 was, therefore, applicable.[3] We agree.
We find the evidence in the record before us insufficient to support a conclusion as to whether or not defendant was in good faith when he built his home. However, for the foregoing reasons, we believe that he is entitled to equitable relief under Article 21 if he was in good faith. It was within the trial judge's discretion to grant a new trial pursuant to LSA-C.C.P. Art. 1973, and we believe that a new trial limited to the issue of plaintiff's remedies against defendant should have been granted.
We therefore, remand this matter to the district court in order for it to determine whether or not defendant was in good faith when he built his home. In the event that the court finds that he was in good faith, it will become necessary for it to determine how to adequately redress plaintiff for the impediment to the enjoyment of his land without imposing the harsh and inequitable remedy of requiring defendant to demolish his home. We note that although LSA-C.C. Art. 670 is not applicable, we believe that it would be within the court's power under LSA-C.C. Art. 21 to grant a predial servitude upon the payment of compensation for its value as provided by that article. Plaintiff would thus be compensated for defendant's use of the land upon which the house encroaches without being permanently deprived of the ownership of the land. Since plaintiff has not requested a "forced sale" of the property as did the plaintiff in Morehead v. Smith, supra, we do not believe that such a remedy would be appropriate.
For the above and foregoing reasons, the judgment is affirmed insofar as it recognizes plaintiff as owner of the disputed property and sets the boundary as that shown in the survey plat prepared by Charles C. Wise. It is reversed insofar as it states that plaintiff is entitled to be sent and put into full possession of the property, and this matter is remanded to the district court for further proceedings consistent with the views expressed herein.
All costs of this appeal are assessed against defendant, James A. Spurgeon.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
NOTES
[1] LSA-C.C. art. 670 states:

"When a landowner constructs in good faith a building that encroaches on an adjacent estate and the owner of that estate does not complain within a reasonable time after he knew or should have known of the encroachment, or in any event complains only after the construction is substantially completed, the court may allow the building to remain. The owner of the building acquires a predial servitude on the land occupied by the building upon payment of compensation for the value of the servitude taken and for any other damage that the neighbor has suffered."
[2] LSA-C.C. art. 508 provides:

"When plantations, constructions and works have been made by a third person, and with such person's own materials, the owner of the soil has a right to keep them or to compel this person to take away or abolish the same.
If the owner requires the demolition of such works, they shall be demolished at the expense of the person who erected them, without any compensation; such person may even be sentenced to pay damages, if the case require it, for the prejudice which the owner of the soil may have sustained.
If the owner keeps the works, he owes to the owner of the materials nothing but the reimbursement of their value and of the price of workmanship, without any regard to the greater or less value which the soil may have acquired thereby.
Nevertheless, if the plantations, edifices or works have been made by a third person evicted, but not sentenced to make restitution of the fruits, because such person possessed bona fide, the owner shall not have a right to demand the demolition of the works, plantations or edifices, but he shall have his choice either to reimburse the value of the materials and the price of workmanship, or to reimburse a sum equal to the enhanced value of the soil."
[3] LSA-C.C. Art. 21 provides:

"In all civil matters, where there is not express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent."